740 N.E.2d 389 (2000)
317 Ill. App.3d 693
251 Ill.Dec. 308
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Dionna BEACHEM, Defendant-Appellant.
No. 1-99-0852.
Appellate Court of Illinois, First District, Third Division.
November 8, 2000.
Rehearing Denied December 6, 2000.
As Modified on Denial of Rehearing December 6, 2000.
*390 Michael J. Pelletier, Deputy Defender, and Michael H. Orenstein, Assistant Appellate Defender, Chicago, for Appellant.
Richard A. Devine, State's Attorney of Cook County, Chicago (Renee Goldfarb, Christine Cook, Alan J. Spellberg, William D. Carroll and Michele Grimaldi Stein, of counsel), for Appellee.

MODIFIED OPINION ON DENIAL OF PETITION FOR REHEARING
Justice WOLFSON delivered the opinion of the court:
This year, in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court issued a decision that penetrates the constitutional foundation of this State's extended sentencing procedures. In this appeal from a summary dismissal of her post-conviction petition, Dionna Beachem (Beachem) challenges the constitutionality of the extended sentence of 90 years she received for first degree murder. The most serious question before us is whether Apprendi reaches beyond a direct appeal to an appeal of the dismissal of a timely-filed post-conviction petition. We hold that it does.

FACTS
On December 5, 1994, Annie Jones (Jones), a 77 year-old woman living alone on Chicago's south side, was fatally beaten in her apartment. That day, Beachem was arrested and subsequently released on bond for attempting to use Jones' newly-issued credit card at a suburban mall jewelry store. Two days later, Jones' landlord discovered her body.
Beachem was charged with and convicted of residential burglary, home invasion, robbery, and first degree murder. Though the trial court found her eligible for the death penalty, Beachem was sentenced to an extended term of 90 years imprisonment for the murder conviction, 30 years for the home invasion conviction, 15 years for the residential burglary conviction, and six years for the robbery conviction, all sentences running concurrently.
Beachem appealed her convictions and sentences. We affirmed. People v. Beachem, No. 1-96-3260, 294 Ill.App.3d 1094, 242 Ill.Dec. 570, 721 N.E.2d 849 (1998) (unpublished order under Supreme Court Rule 23).
Beachem then filed a pro se post-conviction petition. In a 23-page "MEMORANDUM OPINION AND ORDER," the trial court dismissed Beachem's petition. This appeal followed.

DECISION
Beachem raises two issues in her initial brief.
First, Beachem contends the trial court erred in summarily dismissing the allegation in her post-conviction petition that her trial attorney failed to advise her of a plea-bargain offer. Beachem's petition said: "After my sentencing, 8-26-96 my attorney told my aunt * * * and my mother * * * that the state offered me 20 years and I turned it down. This offer was never brought to my attention. If the state told me that they were offering me 20 years, it was my attorney's job to discuss that issue with me."
The trial judge found Beachem failed to provided the gist of a constitutional claim, which is all that is required at the first stage of a post-conviction proceeding. See People v. Frieberg, 305 Ill.App.3d 840, 847, 238 Ill.Dec. 964, 713 N.E.2d 210 (1999). The petition should be dismissed if it is frivolous and patently without merit. *391 People v. Gaultney, 174 Ill.2d 410, 418, 221 Ill.Dec. 195, 675 N.E.2d 102 (1996).
Here, Beachem's petition alleged her attorney should have discussed any offer made by the prosecution directly to her. Assuming Beachem is contending her attorney failed to advise her, this allegation lacks any record support. Beachem relies on a sworn February 5, 1999, handwritten statement from her mother. But this statement was addressed "To the Appellate Court" nearly a month after the trial court dismissed Beachem's petition. The trial judge did not have it.
In exercising our de novo review (People v. Mitchell, 189 Ill.2d 312, 322, 245 Ill.Dec. 1, 727 N.E.2d 254 (2000)), we agree with the trial court: Beachem's plea-bargain offer allegation was "frivolous or * * * patently without merit." 725 ILCS 5/122-2.1 (West 1996). It was pure unsupported conclusion.
Second, Beachem contends the trial court erred in summarily dismissing her allegations of prosecutorial misconduct. Because Beachem's petition contained no such allegations, this claim is waived. 725 ILCS 5/122-3 (West 1996).
In a supplemental brief, Beachem raises another, more substantial issue never addressed in the trial court. Beachem contends her extended term sentence was unconstitutional.
In Beachem's first appeal, we held the trial court did not abuse its discretion in imposing a 90-year extended term sentence. The court found two statutory aggravating factors, "that the crime was exceptionally brutal and heinous, indicative of wanton cruelty, and based on the fact that the victim was over 60 years of age." These findings triggered the extended term sentence provision of the Unified Code of Corrections. See 730 ILCS 5/5-8-2(a)(1) (West 1996).
After Jones' direct appeal, and after the denial of her post-conviction petition, the United States Supreme Court decided Apprendi.
Justice Stevens' opinion for a 5-4 majority of the Court framed the issue:
"The question presented is whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense * * * be made by a jury on the basis of proof beyond a reasonable doubt." Apprendi, 530 U.S. at ___, 120 S.Ct. at 2351, 147 L.Ed.2d at 442.
The Court then said:
"Our answer to that question was foreshadowed by our opinion in Jones v. United States, 526 U.S. 227[, 119 S.Ct. 1215, 143 L.Ed.2d 311] (1999), construing a federal statute. We there noted that `under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' [Citation.] The Fourteenth Amendment commands the same answer in this case involving a state statute." Apprendi, 530 U.S. at ___, 120 S.Ct. at 2355, 147 L.Ed.2d at 446.
Noting the constitutional founders would have recognized no distinction between an element of a felony offense and a so-called "sentencing factor," the Court offered an historical overview of the principle that a criminal defendant is entitled to a jury determination of guilt beyond a reasonable doubt on every element of the charged offense. The Court assured, however, "nothing in this history suggests that it is impermissible for judges to exercise discretiontaking into consideration various factors relating both to offense and offenderin imposing a judgment within the range prescribed by statute." (Emphasis in original.) Apprendi, 530 U.S. at ___, 120 S.Ct. at 2358, 147 L.Ed.2d at 449.
*392 The Court did not provide legislatures any leeway. The fact that the New Jersey legislature intended racial hatred to be an enhanced sentencing provision, not part of the crime of possessing weapons, was of no significance:
"`It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.'" Apprendi, 530 U.S. at ___, 120 S.Ct. at 2363, 147 L.Ed.2d at 455 (quoting Jones, 526 U.S. at 252-53, 119 S.Ct. at 1215, 143 L.Ed.2d at 311 (Stevens, J., concurring)).
The Court said it again: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at ___, 120 S.Ct. at 2362-63, 147 L.Ed.2d at 455.
Apprendi calls into question parts of Illinois' sentencing scheme (see People v. Clifton, Nos. 1-98-2126, 1-98-2384, ___ Ill.App.3d ___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2000 WL 1459781 (September 29, 2000) (Illinois' consecutive sentencing provision, 730 ILCS 5/5-8-4(a) (West 1996) violates Apprendi)), including the extended term provision used by the trial court here. But before proceeding to the merits of Beachem's Apprendi claim, we must answer a threshold question: does Apprendi apply to cases on collateral review? We limit our consideration of this question to timely, first post-conviction petitions. We make no comment on untimely or successive post-conviction petitions.[1]
To determine whether Apprendi reaches back to a timely post-conviction petition, we have to weigh the public's interest in the finality of criminal judgments against its interest in the fairness and integrity of criminal trials. This balance usually tips toward nonretroactivity. See People v. Moore, 177 Ill.2d 421, 430, 226 Ill.Dec. 804, 686 N.E.2d 587 (1997) ("Generally, decisions which announce `new rules' are not to be applied retroactively to cases pending on collateral review.").
But a plurality decision by the United States Supreme Court in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), adopted by the Illinois Supreme Court in People v. Flowers, 138 Ill.2d 218, 237, 149 Ill.Dec. 304, 561 N.E.2d 674 (1990), established two exceptions to this general principle.
First, "a new rule should be applied retroactively if it places `certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" Teague, 489 U.S. at 311, 109 S.Ct. at 1075, 103 L.Ed.2d at 356. Because Apprendi did not address primary, private behavior, this first exception does not apply.
Second, "a new rule should be applied retroactively if it requires the observance of `those procedures that * * * are implicit in the concept of ordered liberty.'" Teague, 489 U.S. at 311, 109 S.Ct. at 1076, 103 L.Ed.2d at 356.
How broad would this second exception be? The Court:
"[W]e believe * * * concerns about the difficulty in identifying both the existence and the value of accuracy-enhancing procedural rules can be addressed by limiting the scope of the second exception to those new procedures without *393 which the likelihood of an accurate conviction is seriously diminished.
Because we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." (Teague, 489 U.S. at 313, 109 S.Ct. at 1077, 103 L.Ed.2d at 358).
In a subsequent case the Court explained:
"It is * * * not enough under Teague to say that a new rule is aimed at improving the accuracy of trial. More is required. A rule that qualifies under this [second] exception must not only improve accuracy, but also `alter our understanding of the bedrock procedural elements` essential to the fairness of a proceeding." (Emphasis in original.) Sawyer v. Smith, 497 U.S. 227, 242, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193, 211 (1990) (quoting Teague).
Much depends on how we describe the holding in Apprendi. If we were to say Apprendi reaches only a portion of a noncapital sentence, not its underlying conviction, it would be difficult, but not impossible, to make a case for the existence of procedures that are implicit in the concept of ordered liberty, per Teague and Flowers.[2] But analysis by label or categorysentence or convictionis not a principled methodology. The question is how far a certain procedure reaches into the constitutional fabric of a fundamentally fair trial and conviction. Does it reach "bedrock"?
One Federal trial court has answered this question. In United States v. Murphy, 109 F.Supp.2d 1059 (D.Minn.2000), the court insisted Apprendi "compels a radical shift in criminal procedure" because it requires a jury finding, beyond a reasonable doubt, on facts previously found by a judge under a lesser standard of proof. Murphy, 109 F.Supp.2d at 1064 (citing Apprendi, 530 U.S. at ___, 120 S.Ct. at 2366, 147 L.Ed.2d at 458-59). The court also noted the vital role the reasonable doubt standard plays in reducing the risk of erroneous convictions. Murphy, 109 F.Supp.2d at 1064 (citing In re Winship, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970)). The court concluded:
"There can be little doubt that the sweeping new requirement announced by the Court in Apprendi is so grounded in fundamental fairness that it may be considered of watershed importance. Accordingly, the court concludes that the Apprendi decision falls under the second exception to the Teague nonretroactivity principle * * *." Murphy, 109 F.Supp.2d at 1064.
The rights affirmed in Apprendi are at the core of our criminal justice system. Justice Stevens' majority opinion:
"At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without `due process of law,' Amdt. 14, and the guarantee that `in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury,' Amdt. 6.[] Taken together, these rights indisputably entitle a criminal defendant to `a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' [Citation.]" Apprendi, 530 U.S. at ___, 120 S.Ct. at 2355-56, 147 L.Ed.2d at 447.
*394 The right to a jury trial, and particularly its companion right to a jury verdict proved beyond a reasonable doubt, stand, inviolable, for what the Apprendi Court termed "cogent reasons" related to accuracy:
"Prosecution subjects the criminal defendant both to `the possibility that he may lose his liberty upon conviction and * * * the certainty that he would be stigmatized by the conviction.' [Citation.] We thus require this [reasonable doubt standard], among other, procedural protections in order to `provide concrete substance for the presumption of innocence,' and to reduce the risk of imposing such deprivations erroneously. [Citation.] If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not at the moment the State is put to proof of those circumstancesbe deprived of protections that have, until that point, unquestionably attached." (Emphasis added.) Apprendi, 530 U.S. at ___, 120 S.Ct. at 2359, 147 L.Ed.2d at 451.
The argument for extending Apprendi to collateral proceedings relies on the conclusion that the operative factthe fact that leads to an enhanced sentencebecomes an element of the offense. The Supreme Court warned against a restrictive use of labels when analyzing the two factors at issue in Apprendi's sentencingunlawful possession of a weapon and selection of victims to intimidate them because of their race: "Merely using the label `sentence enhancement' to describe the latter [selecting victims according to race as a factor to exceed the maximum sentence] surely does not provide a principled basis for treating them differently." Apprendi, 530 U.S. at ___, 120 S.Ct. at 2355, 147 L.Ed.2d at 447.
In a footnote, the Court observed an increase beyond the maximum authorized statutory sentence "* * * is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an `element' of the offense." Apprendi, 530 U.S. at ___ n. 19, 120 S.Ct. at 2365 n. 19, 147 L.Ed.2d at 457 n. 19; see also Apprendi, 530 U.S. at ___, 120 S.Ct. at 2379, 147 L.Ed.2d at 473 (Thomas, J., concurring) ("If a fact is by law the basis for imposing or increasing punishmentfor establishing or increasing the prosecution's entitlementit is an element [of the crime].").[3] But the Court again cautioned against placing form over substance: "Despite what appears to us the clear, `elemental' nature of the factor here, the relevant inquiry is one not of form, but of effectdoes the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" (Emphasis added.) Apprendi, 530 U.S. at ___, 120 S.Ct. at 2365, 147 L.Ed.2d at 457.
We take Apprendi to mean that once the defendant serves the prescribed maximum sentence, he or she remains in prison on a charge never made and never proved. And if we acknowledge the defendant remains in prison on a charge never made or proved, we have impugned the integrity of our criminal justice system. It is as if the sentencing judge actually said to the defendant: "I have convicted you of a charge never made against you and never heard by the jury, and I have done it based on the preponderance of the evidence." Such *395 a conviction, and its concomitant sentence, are repugnant to our notions of fundamental fairness.
Since Teague, no United States Supreme Court or Illinois Supreme Court case has found a new rule qualifies for retroactivity under the second Teague exception.[4] But these decisions either do not involve fundamental rights or do not directly implicate accuracy. They are not "bedrock" pronouncements.
For example, in Sawyer, the Court held Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), which prohibited a capital sentence if the prosecution misled the jury to believe the ultimate sentencing decision rested elsewhere, did not apply retroactively. The Court recognized the false information outlawed in Caldwell "might produce `substantial unreliability as well as bias in favor of death sentences'" (Sawyer, 497 U.S. at 233, 110 S.Ct. at 2827, 111 L.Ed.2d at 205 (quoting Caldwell)), but the Court felt Caldwell provided merely "an additional measure against error" beyond that afforded by another case (Sawyer, 497 U.S. at 244, 110 S.Ct. at 2832, 111 L.Ed.2d at 212). That is,
"The Caldwell rule was designed as an enhancement of the accuracy of capital sentencing, a protection of systemic value for state and federal courts charged with reviewing capital proceedings. But given that it was added to an existing guarantee of due process protection against fundamental unfairness, we cannot say this systemic rule enhancing reliability is an `absolute prerequisite to fundamental fairness' [citation], of the type that may come within Teague's second exception." Sawyer, 497 U.S. at 244, 110 S.Ct. at 2832, 111 L.Ed.2d at 212-13, (quoting Teague).
Apprendi not only safeguards fundamental fairness; its reasonable doubt standard provides the only measure of accuracy in extended sentencing. Where a new *396 rule secures both "the accuracy of the truth-finding function" and "the fairness and the constitutional integrity of a criminal proceeding," courts have held it applies retroactively. People v. Kubik, 214 Ill. App.3d 649, 657, 158 Ill.Dec. 152, 573 N.E.2d 1337 (1991) (Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), holding a nontestifying codefendant's interlocking confession inadmissible at a joint trial, applied retroactively to a post-conviction proceeding); accord Graham v. Hoke, 946 F.2d 982, 994 (2d Cir. 1991); see also People v. Ikerd, 47 Ill.2d 211, 213, 265 N.E.2d 120 (1970) (adopting Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968)the holding that a nontestifying codefendant's confession is inadmissible at a joint trial applies retroactively as required by "fundamental fairness").
Several Federal Circuit Court cases have considered the retroactivity of Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); and Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), which held jury instructions diluting the reasonable doubt standard were unconstitutional. These cases held Cage and its progeny fall within Teague's second exception because "[t]he reasonable doubt standard guards against conviction of the innocent by ensuring the systemic accuracy of the criminal system" and "use of a lower standard of proof frustrates the jury-trial guarantee." (Emphasis in original.) Nutter v. White, 39 F.3d 1154, 1157-58 (11th Cir.1994) (Cage applied retroactively); accord Gaines v. Kelly, 202 F.3d 598 (2d Cir.2000) (Cage applied retroactively); Humphrey v. Cain, 138 F.3d 552 (5th Cir.1998) (en banc), aff'g, 120 F.3d 526 (5th Cir.1997) (Victor/Cage applied retroactively); Harmon v. Marshall, 69 F.3d 963 (9th Cir. 1995) (Sullivan applied retroactively); Adams v. Aiken, 41 F.3d 175 (4th Cir.1994) (Sullivan applied retroactively); see also Nevius v. Sumner, 105 F.3d 453, 462 (9th Cir.1996) (prima facie showing the Supreme Court made Cage retroactive to habeas corpus cases); cf. V. v. New York, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972) (Winship, holding the reasonable doubt standard governs juvenile delinquency proceedings, applied retroactively).[5]
*397 Flowers can be distinguished. In Flowers, the Illinois Supreme Court held People v. Reddick, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988), did not apply to cases on collateral review. The Reddick court had found unconstitutional jury instructions which erroneously stated the burden of proof for voluntary manslaughter mitigating mental states. The Flowers court recognized Reddick involved a "grave" jury instruction error "of constitutional dimension" (Flowers, 138 Ill.2d at 236-37, 149 Ill.Dec. 304, 561 N.E.2d 674), but declined to place a Reddick error within Teague's second exception: "This exception must be narrowly construed and we do not believe that the Reddick rule established such a component of basic due process so as to fall within it." Flowers, 138 Ill.2d at 242, 149 Ill.Dec. 304, 561 N.E.2d 674.
Reddick discussed the constitutional obligation of the jury to follow the trial judge's instructions (see People v. Jenkins, 69 Ill.2d 61, 66-67, 12 Ill.Dec. 728, 370 N.E.2d 532 (1977)), but, unlike Victor, Cage, Sullivan, or now Apprendi, it did not implicate the right to a jury verdict beyond a reasonable doubt, and, consequently, the fundamental fairness and accuracy concerns inherent in the second Teague exception.
Apprendi tells us we deal with "constitutional protections of surpassing importance." Apprendi, 530 U.S. at ___, 120 S.Ct. at 2355, 147 L.Ed.2d at 457. The reasonable doubt standard "* * * reflects a profound judgment about the way in which law should be enforced and justice administered." Apprendi, 530 U.S. at ___, 120 S.Ct. at 2356, 147 L.Ed.2d at 447-48 (quoting Winship). Our jury tradition is "an indispensable part of our criminal justice system." Apprendi, 530 U.S. at ___, 120 S.Ct. at 2366, 147 L.Ed.2d at 459. How, then, could we say we do not deal with procedures that are implicit in the concept of ordered liberty? Have we not reached "bedrock"?
We view the gravity of an Apprendi violation within the narrow window of retroactivity established by the courts. Finding retroactivity never should be lightly done. Can we say the likelihood of an accurate conviction in this case is seriously diminished? If we conclude there is a certainty of inaccurate conviction since Beachem was convicted of a crime never charged or proved, it follows that Beachem's imprisonment beyond the maximum sentence violates established principles of fundamental fairness.
We understand the implications of extending Apprendi to collateral review. But we do what we believe the law requires. Our constitutional history teaches us we best survive when we hew to the line drawn by the rule of law. Because, under Teague, we conclude Apprendi implicates procedures implicit in the concept of ordered liberty, we find Apprendi applies to a timely-filed post-conviction petition.
Because Apprendi applies, we turn to the merits of Beachem's claim that her sentence is unconstitutional.[6]
The State initially contends Beachem waived this issue when she failed to include it in her post-conviction petition. But Apprendi was decided nearly 18 months after the trial court denied her petition. Beachem instead raised Apprendi in a supplemental brief before this court shortly after it was decided. Beachem did *398 not forfeit her right to review of her extended sentence in light of Apprendi. People v. Lathon, 317 Ill.App.3d 573, 578, 251 Ill.Dec. 296, 740 N.E.2d 377 (2000); Clifton, Nos. 1-98-2126, 1-98-2384, slip op. at 50-51, ___ Ill.App.3d at ___-___, ___ Ill.Dec. ___, ___ N.E.2d ___, 2000 WL 1459781; see People v. Wooters, 188 Ill.2d 500, 510, 243 Ill.Dec. 33, 722 N.E.2d 1102 (1999) ("* * * although defendant neglected to raise this issue before the circuit court, the constitutional dimension of the question permits this court to address defendant's argument.").
The State also contends Apprendi does not apply here because Beachem's 90-year sentence did not exceed the maximum penalties for first degree murderdeath or life imprisonment. See 720 ILCS 5/9-1(b) (West 1996); 730 ILCS 5/5-8-1(a)(1)(b), (c) (West 1996).
This argument misreads the statutory scheme.
Section 5-8-1(a) of the Unified Code of Corrections provides:
"(a) Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:
(1) for first degree murder,
(a) a term shall be not less that 20 years and not more than 60 years * * *." 730 ILCS 5/5-8-1(a)(1)(a) (West 1996).
Under section 5-8-1(a)(1)(b) of the sentencing code, Beachem could receive natural life imprisonment if "the court finds the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or, except as set forth in subsection (a)(1)(c) of this Section, that any of the aggravating factors listed in [the death penalty statute] are present * * *." (Emphasis added.) 730 ILCS 5/5-8-1(a)(1)(b) (West 1996).
Further, Beachem could receive the death penalty only upon a unanimous jury finding, beyond a reasonable doubt, of at least one statutory aggravating factor. 720 ILCS 5/9-1(b), (f-g) (West 1996). And Beachem could receive life imprisonment under section 5-8-1(a)(1)(c) only in cases where the death penalty is not imposed, and only if she was a previously convicted murderer or if she was found guilty of murdering certain individuals, such as police officers or firefighters. 730 ILCS 5/5-8-1(a)(1)(c)(i-vi) (West 1996). Jury trial and reasonable doubt protections are preserved in these death penalty sections.
But Beachem was not sentenced under section 5-8-1. She was sentenced under section 5-8-2, "Extended Term," which provides:
"(a) A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5-8-1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5-5-3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to the following:
(1) for first degree murder, a term shall be not less than 60 years and not more than 100 years * * *." (Emphasis added.) 730 ILCS 5/5-8-2(a)(1) (West 1996).
Section 5-5-3.2(b) provides:
"The following factors may be considered by the court as reasons to impose an extended term sentence under Section 5-8-2 upon any offender:
* * *
(2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty; or

*399 * * *
(4) When a defendant is convicted of any felony committed against:
* * *
(ii) a person 60 years of age or older at the time of the offense * * *." (Emphasis added.) 730 ILCS 5/5-5-3.2(b) (West 1996).
Under section 5-8-2(a), the trial court cannot exceed the section 5-8-1(a)(1)(a) 20-60 year range and impose an extended term without finding a section 5-5-3.2(b) aggravating factor by a preponderance of the evidence. We view 60 years as the prescribed maximum sentence for first degree murder in this State.
Here, the trial court found the murder was accompanied by exceptionally brutal or heinous behavior, as well as being committed against a victim at least 60 years old. We now must determine whether these findings violated Apprendi.
The facts on which the trial court relied to increase Beachem's murder sentence "brutal or heinous behavior" and a victim at least 60 years of agewere never charged in the first degree murder counts. Beachem's robbery count, however, did charge Beachem took personal property "FROM THE PERSON OF ANNIE JONES A PERSON SIXTY YEARS OF AGE OR OVER."
The extended term facts were not submitted to the jury in the court's first degree murder issues instruction. But the court's robbery issues instruction did say the prosecution must prove "That the person from whom the defendant took property was 60 years of age or over."
None of the extended term facts appeared on the jury's first degree murder or robbery verdict forms.
The robbery count and the robbery issues instruction concerning the victim's age might support an extended term sentence for first degree murder, an issue we do not now decide. But the trial court's "exceptionally brutal and heinous" finding clearly offends Apprendi. If Beachem's extended sentence rested on that ground, it could not stand.
In Apprendi, the Court did not say the New Jersey statute was void on its face. The Court referred to an unconstitutional "procedure." Apprendi, 530 U.S. at ___, 120 S.Ct. at 2366, 147 L.Ed.2d at 459. We take that to mean the statute was unconstitutionally applied to Apprendi. That is the course we take in this case.

CONCLUSION
Because the post-conviction hearing judge did not have the opportunity to consider the impact of Apprendi in the sentencing court, we believe the best course is to remand this cause to the trial court for consideration of Beachem's sentence in light of the views we express in this opinion. We affirm the trial judge's summary dismissal of the other issues raised by Beachem in her post-conviction petition.
Affirmed in part; vacated and remanded in part.
HALL, P.J., and BURKE, J., concur.
NOTES
[1] Several Federal Circuit Courts have addressed the related question whether Apprendi applies to a second collateral review petition under 28 U.S.C.A. § 2255 (West 1994 & Supp.2000). These courts have replied with a uniform no. See Rodgers v. United States, 229 F.3d 704 (8th Cir.2000); Talbott v. Indiana, 226 F.3d 866 (7th Cir.2000); In re: Joshua, 224 F.3d 1281 (11th Cir.2000); Hernandez v. United States, 226 F.3d 839 (7th Cir.2000); Sustache-Rivera v. United States, 221 F.3d 8 (1st Cir.2000).
[2] Because "a criminal judgment necessarily includes the sentence imposed upon the defendant" (Teague, 489 U.S. at 314 n. 2, 109 S.Ct. at 1077 n. 2, 103 L.Ed.2d at 358 n. 2), Teague's accuracy concerns may be implicated by sentencing procedures, as well as by trial procedures. See Graham v. Collins, 506 U.S. 461, 478, 113 S.Ct. 892, 903, 122 L.Ed.2d 260, 277 (1993) (addressing "the likelihood of obtaining an accurate determination in [a capital] sentencing proceeding"); see generally G. Knapp, Annotation, Supreme Court's views as to retroactive effect of its own decisions announcing new rules as to sentencing in criminal cases, 122 L.Ed.2d 837 § 7 (1997).
[3] The Seventh Circuit has observed:

"Prisoners seem to think that Apprendi reopens every sentencing issue decided by a federal court in the last generation. It does not. All Apprendi holds is that most circumstances increasing a statutory maximum sentence must be treated as elements of the offenseand, if the defendant has demanded a jury trial, this means that they must be established beyond a reasonable doubt to the jury's satisfaction." (Emphasis added.) Talbot, 226 F.3d at 869.
[4] See O'Dell v. Netherland, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997): no retroactive application for Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), holding a capital defendant can inform the jury about parole ineligibility; Lambrix v. Singletary, 520 U.S. 518, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997): no retroactive application for Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), holding neither the jury nor the judge can weigh invalid aggravating circumstances in capital sentencing; Gray v. Netherland, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996): no retroactive application for a proposed new rule regarding notice of evidence; Goeke v. Branch, 514 U.S. 115, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995)(per curiam): no retroactive application for a Federal Circuit Court rule regarding the dismissal of recaptured fugitive appeals; Caspari v. Bohlen, 510 U.S. 383, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994): no retroactive application for Supreme Court decisions regarding double jeopardy in capital sentencing; Gilmore v. Taylor, 508 U.S. 333, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993): no retroactive application for Falconer v. Lane, 905 F.2d 1129 (7th Cir.1990), holding the trial court must give a jury instruction on mitigating mental states; Graham, 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260: no retroactive application for Supreme Court decisions regarding mitigating evidence during sentencing; Saffle v. Parks, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990): no retroactive application for U.S. Supreme Court decisions regarding mitigating evidence during sentencing; Butler v. McKellar, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990): no retroactive application for Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), holding the Fifth Amendment bars police-instigated interrogation following a suspect's request for counsel in a separate investigation; Teague, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334: no retroactive application for Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), holding the State may not exercise race-based peremptory challenges; People v. Caballero, 179 Ill.2d 205, 227 Ill.Dec. 965, 688 N.E.2d 658 (1997): no retroactive application for Morgan v. Illinois, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), holding the defendant can inquire into venirepersons' opinions in support of the death penalty; People v. Holman, 164 Ill.2d 356, 207 Ill.Dec. 467, 647 N.E.2d 960 (1995): no retroactive application for Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), holding a criminal defendant may raise a Batson issue even though the defendant and the excused juror do not share the same race.
[5] Other post-Teague Federal Circuit Court cases have held new rules apply retroactively under the second exception. See Johnson v. Howard, 963 F.2d 342 (11th Cir. 1992): retroactive application for Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), holding double jeopardy prohibits a subsequent prosecution; Williams v. Dixon, 961 F.2d 448 (4th Cir. 1992): retroactive application for McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) and Mills v. Maryland, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), holding a jury instruction requiring unanimity in finding mitigating evidence was unconstitutional; Ostrosky v. Alaska, 913 F.2d 590 (9th Cir. 1990): retroactive application for a trial court decision holding unconstitutional the statute under which the defendant was convicted; Hall v. Kelso, 892 F.2d 1541 (11th Cir. 1990): retroactive application for Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) and Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), holding burden-shifting jury instructions were unconstitutional.

Additionally, several pre-Teague, United States Supreme Court cases held new rules were retroactively applicable. See Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970): rule applying the double jeopardy prohibition to the States; McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968): rule requiring counsel at a probation revocation hearing; Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968): rule barring evidence of a guilty plea from a preliminary hearing without counsel; Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968): rule precluding dismissal of jurors who generally object to the death penalty; Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964): rule outlining judicial procedures for determining the voluntariness of a confession; Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963): rule requiring counsel on appeal; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963): rule requiring counsel at trial; Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961): rule requiring counsel at arraignment; Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956): rule providing an indigent defendant with a free transcript. See generally G. Chamberlin, Annotation, United States Supreme Court's Views as to Retroactive Effect of Its Own Decisions Announcing New Rules, 65 L.Ed.2d 1219 § 5[d] (1980).
[6] Beachem attempts to shortcut this question, contending a sentence which does not conform to a statutory requirement is void. See People v. Arna, 168 Ill.2d 107, 113, 212 Ill. Dec. 963, 658 N.E.2d 445 (1995). We find Arna does not apply. Beachem's sentence conformed to all statutory requirements. We must decide whether her sentence conformed to Apprendi's constitutional requirements.