SECOND DIVISION

August 21, 2001

No. 1-98-3552

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

TAKI PEACOCK,

Defendant-Appellant.

))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Richard L. Samuels,

Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

Following a bench trial, defendant Taki Peacock was found guilty of first degree murder, aggravated vehicular hijacking, armed robbery, and aggravated kidnapping.  Defendant was given an extended-term sentence of 80 years for first degree murder and 30 years on each of the other offenses, to run concurrent with the 80-year term.

The evidence at trial showed that on August 31, 1995, the victim, 60-year-old Rufus Taylor, was confronted in his garage at 6937 South Merrill Avenue in Chicago by defendant and Lawrence Wallace.  According to a written statement defendant later gave to an assistant State's Attorney, he and Wallace had planned to take the victim's car the day before but had decided against it after seeing someone sitting on a porch near the victim's garage.  On August 31, when the victim got out of his car, Wallace put a .25 caliber gun to his head.  Defendant had obtained the gun earlier from his sister-in-law.  Defendant drove the victim's car to an area near 131st
 Street and Halsted Street while Wallace held the victim at gunpoint in the backseat.  On the way, the victim asked to be dropped off and Wallace said they could not drop him off because he had seen their faces.  Defendant, in his statement, acknowledged that he then "figured Wallace was going to kill Mr. Taylor."  Upon arriving at 131st
 and Halsted, defendant located a secluded spot on property belonging to the Cook County Forest Preserve.  According to defendant's statement, they got out of the car and Wallace then shot the victim in the face.  Defendant, after unjamming the gun, fired a single shot at the victim but missed.  Wallace then shot the victim again.  Defendant and Wallace left the wounded victim and drove to Gary, Indiana, in the victim's car.  Wallace gave defendant $200 that they had taken from the victim.  When defendant and Wallace were told the "chop-shop" they were looking for was closed, they went to a fast-food restaurant drive-up window and bought a bucket of chicken.  The drive-through attendant testified at trial that defendant, who was driving, asked her what time she was going to get off work and offered to come back and pick her up later.

After being left to die by defendant and Wallace, the victim managed to get to Halsted Street, where civilians came to his aid and called the police.  Police and paramedics arrived on the scene.  The victim was initially conscious and told an officer that his car had been taken by two black males, one tall, one short, and that the shorter one (Wallace) had shot him.  One of the civilians who had stopped to help contacted the victim's wife.  The officers learned that the victim's car was a black Jaguar with vanity plates.

Following a message sent out over the Illinois State Police Emergency Network, defendant and Wallace were apprehended in the victim's car by Lake County, Indiana, sheriff's police.  Defendant subsequently met with assistant State's Attorneys from Cook County and gave a signed statement detailing the above events.

The victim was taken to a hospital, where he died several days later.  The cause of death was a single gunshot wound to the head. 

Defendant's case was set for a jury trial on July 13, 1998.  On that day, defense counsel stated that after extensive discussion with his client, defendant had decided to waive his right to a jury trial.  Counsel also informed the court that defendant had discussed the matter with his mother.  Defense counsel tendered to the court a jury waiver signed by defendant in open court.  The trial court then admonished defendant regarding his right to a jury trial and ruled that defendant had knowingly waived his right to a jury.  Defendant's counsel stated that it was his understanding that the trial would commence the next day.  The State acknowledged that it had "all the witnesses on line for tomorrow as if it was a jury trial."  After determining a starting time for the next afternoon, the trial court stated: "Gentlemen, will that be by agreement hold on call to tomorrow?"  The State then entered a 
nolle
 
prosequi
 on 14 of the counts against defendant, leaving 8 counts for trial.  The court then stated: "Okay, gentlemen, trial will stand recessed until tomorrow."

The following day, the following colloquy took place:

"THE COURT: Please be seated.  *** Ready for trial?

[DEFENSE COUNSEL]: Yes, Judge.  For the record, I would like to spread of record that earlier today around 12:30, I had an opportunity to come here to speak to my client and I was alerted by the court personnel that my client had an urgent request to speak to me.

Upon speaking with my client, he has instructed me at this time that he would respectfully like to withdraw his jury waiver that he tendered and entered before this Court yesterday.  I discussed the matter with him extensively, Judge, and I feel that it is my duty to relay to the Court his request at this time to withdraw the waiver that he had entered yesterday, so we will be moving to withdraw said waiver, and ask for a jury instead.

THE COURT: Thank you, Mr. Wilson.  Mr. Lynn.

[STATES ATTORNEY]: Judge, it is my understanding of the law in Illinois that a jury waiver that has been knowingly and voluntarily entered should stand, absent some showing as to that it was given under some misapprehension of the facts or the law.  There is no indication that the defendant was improperly admonished in any fashion as to the facts or the consequences, or as to the law.

I believe therefore it is within the discretion of the Court as to whether the Court feels the defendant was properly admonished and whether the waiver was voluntarily and knowingly made.  And therefore, Judge, I believe it is within Your Honor's decision, and absent any showing, I believe the defendant cannot now after knowingly waiving, with all witnesses present in court, I don't believe he can not [
sic
] waive it.

THE COURT: The waiver was executed yesterday and filed, and the defendant was appropriately admonished, and knowingly waived his right to jury, and with the assurance that number one, the defendant will have a fair trial.

Number two, the only evidence which will be considered will be the evidence which is brought out in open court in this trial, and that the defendant will have a fair trial, and if, if found guilty, a fair sentencing.

With my thanks Mr. Wilson, the waiver will stand."

After hearing the evidence, the trial court found defendant guilty of first degree murder, aggravated vehicular hijacking, armed robbery, and aggravated kidnapping.  After hearing evidence in aggravation and mitigation, the trial court sentenced defendant to an extended term of 80 years on the murder based on findings that the offense was accompanied by heinous behavior indicative of wanton cruelty and was committed against a person 60 years of age or older.  The court also sentenced defendant to 30 years on the other three counts, to run concurrent to the 80-year sentence for murder.

Defendant now appeals.

Defendant first contends that he was deprived of his fundamental right to trial by jury when the trial court denied his request to withdraw his jury waiver prior to trial.  According to defendant, in denying his request, the court failed to consider whether granting the motion would result in a delay of the trial, impede justice, prejudice the State, or inconvenience the witnesses.

Although a defendant has a right to a trial by jury, once he has voluntarily waived that right he cannot then withdraw his waiver as a matter of right.  
People v. Catalano
, 29 Ill. 2d 197, 202, 193 N.E.2d 797 (1963).  Whether a defendant may withdraw his waiver is a matter that is ordinarily within the discretion of the trial court unless the circumstances indicate the defendant failed to realize the consequences of his waiver.  
Catalano
, 29 Ill. 2d at 202.  Defendant's waiver was knowingly and understandingly made in open court and the validity of that waiver is not in dispute here.  The question before us is whether the trial court abused its discretion in denying defendant's motion to withdraw his validly entered jury waiver.

Although not raised by the parties on appeal, defendant's claim of error has been waived.  Defendant's motion to withdraw his waiver was made orally by defense counsel.  Upon denial of the motion, defense counsel did not object and instead simply stated that defendant was ready for trial.  Defendant did not raise the issue of the denial of his motion to withdraw in a posttrial motion.  The issue has therefore been waived.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).

Nor do we find defendant's claim of error reviewable as plain error.  Pursuant to Supreme Court Rule 615(a), issues affecting substantial rights are reviewable as plain error even where such issues were not properly preserved for review.  134 Ill. 2d R. 615(a).  The plain error rule may be invoked only where either the evidence is closely balanced or the errors are of such magnitude that defendant was denied a fair and impartial trial and remedying the error is necessary to preserve the integrity of the judicial process.  
People v. Williams
, 193 Ill. 2d 306, 348-49, 739 N.E.2d 455 (2000); 
People v. Nieves
, 192 Ill. 2d 487, 502-03, 737 N.E.2d 150 (2000).  Having reviewed the record, we cannot say that the evidence in this case was closely balanced.  Nor can we say that the claimed error either affected a substantial right or was of such magnitude that defendant was denied a fair and impartial trial.  A defendant has a constitutional right to a jury trial unless he understandingly waives the right in open court and signs a valid jury waiver.  
People v. Stokes
, 281 Ill. App. 3d 972, 977, 667 N.E.2d 600 (1996).  As noted previously, there is no question that defendant validly waived his right to a jury trial and, having done so, he was not in a position to demand the withdrawal of that waiver as a matter of right.  See 
Catalano
, 29 Ill. 2d at 202.  We note that defense counsel provided the court with no explanation for defendant's request to withdraw the waiver and assume that defendant simply changed his mind.  Defendant has made no claim that he did not receive a fair and impartial trial and, upon review of the record, we find that defendant received a fair trial.  Defendant's claim of error is not, therefore, subject to plain error review.

Even if we were to consider the merits of defendant's claim, he would not prevail.  Defendant contends that the supreme court, in 
Catalano
, 29 Ill. 2d at 203, set out a timeliness test for determining whether a motion to withdraw a jury waiver should be granted and that the trial court here abused its discretion in failing to apply that test in ruling on defendant's motion to withdraw his waiver.  In 
Catalano
, 29 Ill. 2d at 203, the court stated that the question of whether a defendant's motion for withdrawal of a jury waiver is timely made "involves the question of whether such motion may be made after the commencement of the trial and it also involves the question whether such motion, although made prior to the actual commencement of trial, was made at a time when the granting thereof would result in delay of the trial, would impede justice or prejudice the State, or would inconvenience the witnesses."  We find that the supreme court, in 
Catalano
, was not enunciating a timeliness test that was to be strictly applied each time a defendant sought to withdraw a validly entered waiver but was merely providing guidance to trial courts regarding determinations on such requests.  We note that defendant has not cited, and we have not found, any cases that have portrayed the above language in 
Catalano
 in the manner argued by defendant.  Certainly, the timeliness of a motion to withdraw has not been analyzed in every case denying such motions in the years since 
Catalano
 was issued.  In 
People v. Chapple
, 291 Ill. App. 3d 574, 578-79, 683 N.E.2d 1001 (1997), the reviewing court upheld the denial of a motion to withdraw a validly executed jury waiver even though the request to withdraw was made one month prior to trial.  In 
Chapple
, 291 Ill. App. 3d at 578-79, the court found the motion to withdraw the jury waiver analogous to a request to withdraw a guilty plea, where the defendant has a burden of demonstrating to the trial court the necessity of withdrawing the plea.  The fact that the request to withdraw came a month prior to the commencement of trial was not discussed.  Likewise, in 
People v. Flores
, 245 Ill. App. 3d 149, 153-54, 613 N.E.2d 1372 (1993), the reviewing court affirmed the trial court's pretrial refusal to permit the defendant to withdraw his jury waiver.  The court, in so ruling, found that the claimed change of circumstance defendant was asserting had not invalidated defendant's waiver.  Despite the fact that the request to withdraw the jury waiver was made prior to trial, the timeliness of the request was never addressed.  We note that in the instant case, defense counsel, in making his oral motion to withdraw the jury waiver, made no claim regarding a change of circumstance and did not even provide an explanation for defendant's request. 

Defendant also argues that the trial court's remarks, in denying the motion, indicate the court "was operating under the misapprehension that the only inquiry necessary for ruling on the motion was whether the jury waiver was knowing and voluntary."  Having reviewed the record in this case, we find it does not support defendant's argument.  Although the court commented on whether the waiver had been validly executed, that was a necessary ruling in denying defendant's motion to withdraw his jury waiver.  The court's mere failure to comment on the timeliness of the motion to withdraw does not indicate that it was operating under a misapprehension regarding its discretion to allow the motion to withdraw.  Nor does the trial court's ruling persuade us that the court necessarily failed to consider the timeliness of the motion.

Finally, even assuming that application of the factors set forth in 
Catalano
 was required, the trial court did not abuse its discretion in denying defendant's motion to withdraw.  We disagree with defendant's assertions that the record is "devoid of any indication" that granting the motion to withdraw would have delayed the trial and "is free of any suggestion" that the State would have been prejudiced or witnesses inconvenienced were the withdrawal of the jury waiver allowed.  The record indicates that the State's witnesses were present and waiting for the bench trial to begin at 1 p.m. on July 14, 1998, when defense counsel, without stating a reason, informed the trial court that defendant had requested that his validly executed jury waiver be withdrawn.  Defendant concedes, in his reply brief on appeal, that if the motion to withdraw had been allowed, jury selection would have probably taken up the remainder of the afternoon.  The witnesses waiting to testify would thus have been inconvenienced by being forced to return the following day.  Further, following defendant's jury waiver the previous day, the State entered a 
nolle
 
prosequi
 on 14 of the 22 counts against defendant.  The 
nolle
 
prosequi
 terminated all further prosecution of the dismissed counts and the State would have had to file a new charging instrument to reinstate the affected counts.  See 
People v. Woolsey
, 139 Ill. 2d 157, 168, 564 N.E.2d 764 (1990).  It is unclear whether the State would have proceeded with the same course of action if defendant had not waived his right to a jury trial.

The trial court had discretion in ruling on defendant's motion to withdraw his validly executed jury waiver and the court was not required to apply a specific "timeliness test" or to enunciate findings regarding timeliness in so ruling.  Further, under the circumstances present here, we cannot say the trial court abused its discretion in denying defendant's motion to withdraw his validly executed jury waiver immediately prior to the commencement of trial where granting the motion arguably would have resulted in a delay of the trial, prejudice to the State, and inconvenience to the witnesses.

    Defendant next contends that his extended-term sentence of 80 years was an abuse of discretion.  Where a trial court finds that one of the factors set forth in section 5-5-3.2(b) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(b) (West 1994)) exists, it may sentence a defendant to an extended-term sentence under section 5-8-2 (730 ILCS 5/5-8-2(a) (West 1994)).  In the instant case the trial court found both that defendant's conduct was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, and that the victim was 60 years old.  730 ILCS 5/5-5-3.2(b)(2), (b)(4)(ii) (West 1994).

Defendant contends that the trial court erred in finding that the offense supported a finding of exceptionally brutal or heinous behavior indicative of wanton cruelty.  Initially, we note that the finding of brutal and heinous behavior was unnecessary to the imposition of an extended-term sentence in this case.  Defendant concedes that the victim was 60 years old at the time of his death and that defendant was therefore qualified for an extended-term sentence.  
Because a trial court need find only a single statutory factor in aggravation to impose an extended sentence (
People v. Benkowski
, 215 Ill. App. 3d 615, 621, 575 N.E.2d 587 (1991)), the 
finding regarding the victim's age standing alone was a sufficient basis upon which to impose an extended-term sentence.

Moreover, we find no merit to defendant's contention that the trial court's finding regarding the brutal and heinous nature of the offense was in error.  It is within the trial court's discretion to determine what constitutes exceptionally brutal and heinous behavior indicative of wanton cruelty for the purpose of imposing an extended-term sentence, and absent an abuse of that discretion the sentence of the trial court may not be altered on review.  
People v. Edens
, 174 Ill. App. 3d 1033, 1045, 529 N.E.2d 617 (1988).
(footnote: 1)  "Brutal" includes conduct that is grossly ruthless, devoid of mercy or compassion, or cruel and cold-blooded, while "heinous" conduct is conduct that is hatefully or shockingly evil, grossly bad, or enormously and flagrantly criminal.  
People v. Abernathy
, 189 Ill. App. 3d 292, 316, 545 N.E.2d 201 (1989).   

Briefly, we note that the course of criminal conduct embarked upon by defendant and Wallace was premeditated.  Defendant obtained the murder weapon in advance with the intent to use it to commit criminal acts.  Wallace and defendant chose the victim and lay in wait.  Although defendant, in allocution, stated that he never planned for the victim to die, he acknowledged in his statement that, as they were driving, he knew Wallace was planning to kill the victim.  Defendant, with that knowledge, chose a secluded spot where the execution of the victim could take place.  The victim was shot in the face.  Defendant unjammed the gun and took a turn in attempting to shoot the victim.  The two then left the victim to die and drove the victim's car to Indiana, where they spent money they had taken from the dying victim and defendant attempted to pick up a woman working at a fast-food restaurant.  The trial court's finding that the murder of the victim was accompanied by brutal and heinous conduct indicative of wanton cruelty was not an abuse of discretion.

Defendant also contends that, regardless of his eligibility for an extended-term sentence, the trial court abused its discretion in imposing an extended-term by failing to take into account the objective of restoring him to useful citizenship.  Specifically, defendant submits that the trial court failed to consider the fact that he was only 17 years old at the time of the offense, had no criminal background, was found guilty under a theory of accountability, and expressed deep remorse over his actions. A trial court is not required to set forth every reason or the weight it gave each factor considered in determining defendant's sentence.  
People v. Brajcki
, 150 Ill. App. 3d 506, 515, 501 N.E.2d 774 (1986).  
Absent evidence to the contrary, a trial court is presumed to have considered any mitigating factors brought before it.  
People v. Wright
, 272 Ill. App. 3d 1033, 1046, 651 N.E.2d 758 (1995).  
Further, a sentence is presumptively correct and only where that presumption has been rebutted by an affirmative showing of error will a reviewing court find that the trial court has abused its discretion.  
People v. Fort
, 229 Ill. App. 3d 336, 340, 592 N.E.2d 1205 (1992).  No such showing has been made here.

Although the trial court was required to consider defendant's rehabilitative potential and other relevant sentencing factors, the court was not required to give greater weight to those factors than to the seriousness of the offense.  
Fort
, 229 Ill. App. 3d at 341-42; 
Brajcki
, 150 Ill. App. 3d at 515.  There is no indication in the record that the trial court, in sentencing defendant, failed to consider any relevant sentencing factors, including defendant's lack of criminal background, age, alleged remorse, and the fact that he was found guilty of first degree murder under a theory of accountability.  In fact, in sentencing defendant, the court made specific mention of defendant's lack of criminal history and the fact that defendant was guilty of the murder on an accountability theory.  Considering the nature and seriousness of the crime and evidence presented in aggravation and mitigation, we find that the trial court did not abuse its discretion in imposing an  extended-term sentence of 80 years. 

After the United States Supreme Court issued its decision in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), the parties were given permission to file supplemental briefs in this appeal addressing the application of 
Apprendi
 to the instant case.  In 
Apprendi
, the Supreme Court held unconstitutional a New Jersey statute which allowed a judge to increase the sentencing range for an offense where the court found, based on a preponderance of the evidence, that the defendant in committing the crime did so with the purpose of intimidating an individual or group on the basis of a particular characteristic possessed by the individual or group.  
In so ruling, the Supreme Court 
held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum [for the relevant offense] must be submitted to a jury, and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 445, 120 S. Ct. at 2362-63.

As noted earlier, the trial court found defendant subject to an extended-term sentence based on findings that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty and that the victim was 60 years old at the time of the offense.  In his supplemental brief, defendant maintained that a violation of the rule set forth in 
Apprendi
 occurred here where the aggravating factors used to impose an extended-term sentence were not pled in the indictment, submitted to the jury, and proven beyond a reasonable doubt.

The State argues that the sentencing range for first degree murder is anywhere from 20 years in prison up to and including the death penalty. 
 A number of Illinois cases have rejected that same argument.  Those cases have held that 
the maximum statutory penalty for first degree murder is that set forth in section 5-8-1(a)(1)(a) of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(a) (West 1994) (stating that a term shall be not less than 20 years and not more than 60 years)), and that the imposition of an extended-term sentence based on a finding by the trial court that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty violates 
Apprendi
 where such findings are based on a relaxed evidentiary standard.  
See, 
e.g.
, 
People v. Beachem
, 317 Ill. App. 3d 693, 708, 740 N.E.2d 389 (2000) (holding that 60 years is "the prescribed maximum sentence for first degree murder in this State" and that an extended-term sentence of more than 60 years that is based on a finding of exceptionally brutal and heinous behavior "clearly offends" 
Apprendi
).  We note that another division of this court, in 
People v. Vida
, No. 1-99-2922, slip op. at 15-25 (June 22, 2001), recently held instead that the statutory sections regarding extended-term sentencing and sentences of imprisonment for a felony should be read together as part of an overall sentencing scheme for murder when determining the statutory range of possible penalties for first degree murder.  Under such an approach, 
an extended-term sentence imposed upon a judicial finding at sentencing that a statutory aggravating factor existed would not necessarily violate 
Apprendi
.  Thus, there is a split in authority in this district regarding how the maximum statutory penalty for first degree murder is to be determined.  
We need not adopt either of the approaches taken by the above cases, however, because even assuming an 
Apprendi
 violation occurred, we find it to be harmless error.

In 
United States v. Nance
, 236 F.3d 820, 825 (7th
 Cir. 2000), the court found an 
Apprendi
 violation where the defendant was subjected to a sentence in excess of the default statutory maximum based on a finding by the trial court at sentencing regarding the amount of drugs involved.  The court went on to hold that the failure to include an amount of drugs in the indictment and to submit that issue to a jury for proof beyond a reasonable doubt was subject to a harmless error analysis.  
Nance
, 236 F.3d at 825-26.  The question to be asked, the court held, was whether it was clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.  
Nance
, 236 F.3d at 825.  The court answered this inquiry in the affirmative and upheld the defendant's sentence.  
Nance
, 236 F.3d at 826.

Similarly, in 
United States v. Anderson
, 236 F.3d 427 (8th
 Cir. 2001), the defendant was found guilty of conspiring to manufacture methamphetamine based on an instruction that told the jury it need only find a "measurable amount" of methamphetamine to convict, rather than a specific amount.  At sentencing, the trial court made a finding that the conspiracy intended to manufacture more than 50 grams of methamphetamine.  Based on its finding, the court sentenced the defendant to 30 years, more than the maximum 20-year sentence allowed where only a "measurable amount" of methamphetamine was involved.  On review, the court concluded that although the imposition of the 30-year sentence contravened the rule of 
Apprendi
, it was harmless beyond a reasonable doubt where no rational jury could have found the appellants guilty of the substantive offense and at the same time found the amount of methamphetamine the conspiracy sought to produce was less than the amount necessary to support the sentence ultimately imposed by the court.  
Anderson
, 236 F.3d at 429-30.

Finally, in 
People v. Rohlfs
, 322 Ill. App. 3d 965 (2001), the defendant argued that his extended-term sentence violated 
Apprendi
 where it was imposed based on the age of the victim and that fact was not submitted to a jury and proved beyond a reasonable doubt.  The Fourth District held that the failure to ask the jury to determine the victim's age may have been harmless error where the victim testified she was 93 years old, there was no dispute regarding her age, and no reasonable jury could have found her to be under the age of 60.  
Rohlfs
, 322 Ill. App. 3d at 972.  Although the court in 
Rohlfs
 ultimately affirmed the extended-term sentence on a different basis, we find its analysis of the age issue to be relevant to our decision.

In the instant case, defendant was given an extended-term sentence by the trial court based on two different aggravating factors:  that the victim was 60 years of age or older and that the murder was committed in an exceptionally brutal and heinous manner.  "A trial court need find only a single statutory factor in aggravation to impose an extended sentence."  
People v. Benkowski
, 215 Ill. App. 3d 615, 621, 575 N.E.2d 587 (1991).  During the trial, the victim's wife testified that they had been married for 37 years and that the victim was 60 years old at the time of his death.  In addition, the parties stipulated at trial that if Cook County Medical Examiner Dr. Lawrence Cogan had been called as a witness, he would have testified that upon examining the victim after his death, he found him to be, among other things, "the stated age of sixty years of age."  In this case, the finding by the trial court regarding the victim's age did not involve a weighing of evidence or examination of defendant's mental state.  Indeed, the parties basically stipulated to the victim's age during the course of the trial.  Moreover, defendant, in his original brief on appeal, conceded "that the deceased in this case, Rufus Taylor, had just turned 60 years old at the time of the offense."  We find, therefore, that had the issue of the victim's age been pled in the indictment and submitted to a jury, there is no question a jury still would have found defendant guilty beyond a reasonable doubt.  Accordingly, although  a violation of 
Apprendi
 may have occurred
 here where the age of the victim was not presented to the trier of fact as part of the indictment
(footnote: 2) and subjected to proof beyond a reasonable doubt, any violation that did occur was harmless error and defendant's extended-term sentence of 80 years is affirmed.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

CAHILL, P.J., and GORDON, J., concur.

FOOTNOTES
1:  We note that the constitutionality of imposing an extended-term sentence in instances where a court finds the presence of brutal and heinous behavior under a standard of proof of less than reasonable doubt is presently the subject of a split in authority within the divisions of the First District.  Compare, 
e.g.
, 
People v. Beachem
, 317 Ill. App. 3d 693, 740 N.E.2d 389 (2000), with 
People v. Vida
, No. 1-99-2922 (June 22, 2001).

2:  Although the record on appeal indicates that none of the counts of the indictment pled as an element of the offense the age of the victim being 60 years, one of the original complaints for preliminary examination charged defendant with aggravated vehicular hijacking based on the victim being 60 years of age.  See 720 ILCS 5/18-4 (West 1994).  Thus, at the commencement of the prosecution, defendant was on notice of the fact that the victim in this case was 60 years of age.