THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT RUSH, Defendant-Appellant.

Fifth District    No. 5—99—0092

Opinion filed May 11, 2001.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

James Creason, State's Attorney, of Salem (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

On November 9, 1995, a Marion County jury found Robert Rush (defendant) guilty of first-degree murder. On January 5, 1996, at defendant's sentencing hearing, the trial judge found the murder "exceptionally brutal and heinous *** indicative of wanton cruelty" and sentenced defendant to an extended-term sentence of 75 years in the Illinois Department of Corrections. On direct appeal, we affirmed defendant's conviction and sentence. *People v. Rush*, No. 5—96—0080 (1998) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)).

On November 9, 1998, defendant filed a *pro se* postconviction petition. The petition alleged that defendant was deprived of his constitutional right to (1) due process of law when the trial court denied defendant an adequate opportunity to obtain private counsel, (2) due process of law when the trial court failed to suppress defendant's prior oral statements not disclosed in discovery, (3) due process of law when the trial court allowed prejudicial photographs to be shown to the jury, and (4) the effective assistance of appellate counsel when appellate counsel failed to raise the above three issues on direct appeal. On December 29, 1998, the trial court dismissed defendant's petition as "patently frivolous and without merit," and defendant appealed.

While defendant's appeal was pending in this court, the United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). *Apprendi* called into question the constitutionality of the sentencing scheme upon which defendant's extended-term sentence was based. On September 21, 2000, defendant filed a motion for leave to file a supplemental brief challenging under *Apprendi* the constitutionality of his extended-term sentence. We granted defendant's motion and will address the issues raised in his supplemental brief. However, before turning to the issues raised by defendant's supplemental brief, we first address defendant's arguments that the trial court erred in dismissing as frivolous and

patently without merit the issues raised in his *pro se* postconviction petition. For reasons explained in the nonpublishable portion of this opinion, we affirm the trial court's dismissal of these issues.

We now turn to defendant's supplemental brief, wherein defendant challenges for the first time the constitutionality of his extended-term sentence. In his supplemental brief, defendant argues that his extended-term prison sentence of 75 years is unconstitutional and must be vacated under the United States Supreme Court's decision in *Apprendi*. Defendant argues that under *Apprendi*, the imposition of his extended-term sentence was unconstitutional because it violated his rights to due process, fair notice, and trial by jury. Defendant also argues that *Apprendi* applies retroactively to collateral proceedings and that, therefore, we must vacate his extended-term sentence and remand his cause for a new sentence to be imposed within the proper statutory range.

In response, the State sets forth three arguments challenging defendant's contentions. First, the State argues that defendant has waived his challenge to the constitutionality of his extended-term sentence because he failed to raise this challenge in his original post-conviction petition filed in the trial court. Second, the State argues that the new rule announced in *Apprendi* does not apply retroactively to claims on collateral review and that because defendant's extended-term sentence was imposed under then-constitutional rules, defendant has no basis to challenge the constitutionality of his extended-term sentence. Finally, the State argues that even if we do find that *Apprendi* applies retroactively, defendant's extended-term sentence is constitutional under *Apprendi*.

In the instant case, defendant was indicted on one count of first-degree murder (720 ILCS 5/9—1(a)(2) (West 1994)). Although the indictment set forth the elements for first-degree murder, it did not allege that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Following the presentation of evidence, the jury was instructed as to the elements of first-degree murder. The jury was not instructed to make a finding that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. The jury returned a signed verdict form finding defendant guilty of first-degree murder as charged.

At defendant's sentencing hearing, the trial judge made a finding that the murder committed by defendant was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Nothing in the record indicates that the finding made by the trial judge was made beyond a reasonable doubt. The statute which allowed the trial judge to make this finding did not require that the finding be

made beyond a reasonable doubt, or by any standard for that matter. However, based upon this "finding," defendant was sentenced to an extended-term sentence of 75 years in the Illinois Department of Corrections.

Under the Illinois statutory laws, the crime of first-degree murder carries a prison sentence of "not less than 20 years and not more than 60 years." 730 ILCS 5/5—8—1(a)(1)(a) (West 1994). However, a trial judge is permitted to sentence a defendant to an extended term beyond the 60 years if the trial judge finds that the offense was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." 730 ILCS 5/5—8—2(a)(1), 5—5—3.2(b) (West 1994). In the instant case, had the trial judge not made the finding that the murder was accompanied by brutal or heinous behavior indicative of wanton cruelty, the trial judge would have had no authority to sentence defendant beyond 60 years' imprisonment. However, based upon the trial judge's finding, defendant was sentenced to 75 years' imprisonment. Defendant contends that this statute, authorizing the procedure by which his sentence was extended 15 years beyond the 60-year maximum, is unconstitutional under *Apprendi* and that, therefore, his extended-term sentence must be vacated.

Before we can address defendant's challenge to the constitutionality of his extended-term sentence, we must first address two preliminary arguments raised by the State. Our agreement with either of these two arguments forecloses an examination of the constitutionality of defendant's extended-term sentence. Again, the first argument concerns whether defendant waived his claim by failing to raise it in his original postconviction petition. The second argument concerns whether the rule announced in *Apprendi* applies retroactively to a postconviction petition. We turn now to the first argument.

■ Generally, a claim that is not raised in an original or amended postconviction petition is waived. 725 ILCS 5/122—3 (West 1998). The State argues that because defendant did not challenge the constitutionality of his extended-term sentence in his original postconviction petition, it is waived. However, when a question raised by a defendant is of constitutional dimension, we can address the issue and relax the application of the waiver rule in the interest of fundamental fairness. *People v. Wooters*, 188 Ill. 2d 500, 510 (1999). The Illinois Appellate Court has already recognized that this precise issue raised by defendant is of constitutional dimension. *People v. Beachem*, 317 Ill. App. 3d 693 (1st Dist. 3d Div. 2000) (the court was faced with the identical question pertaining to the retroactive application of *Apprendi* to collateral proceedings and held that such question was of constitutional dimension and would be addressed); *People v. Kizer*, 318 Ill. App. 3d

238 (1st Dist. 1st Div. 2000). Accordingly, although this issue was not raised in defendant's original postconviction petition, fundamental fairness requires that we examine defendant's claim. Wherefore, we reject the State's first argument that defendant's claim is waived for his failure to raise it in the original postconviction petition.

We now turn to the State's second argument, which certainly is the most controversial and significant issue raised in this appeal: whether the rule announced in *Apprendi* applies retroactively to a defendant's timely filed postconviction petition. However, before reaching our conclusion, it is helpful, if not imperative, to examine several cases that guide our decision. First, we must look at the United States Supreme Court's decision in *Apprendi*. Then, we must turn to the United States Supreme Court decision in *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989), where the Supreme Court, in a plurality decision, clarified when a new rule of law should apply retroactively to cases on collateral review. Next, we must turn to the Illinois Supreme Court decision in *People v. Flowers*, 138 Ill. 2d 218 (1990), where our supreme court adopted the reasoning in *Teague* in determining whether a new rule applied retroactively to a claim brought under the Illinois Post-Conviction Hearing Act. Finally, we turn to *People v. Beachem*, 317 Ill. App. 3d 693 (1st Dist. 3d Div. 2000), *People v. Kizer*, 318 Ill. App. 3d 238 (1st Dist. 1st Div. 2000), *People v. Scullark*, 325 Ill. App. 3d 876 (2001), and *People v. Burns*, 332 Ill. App. 3d 189 (2001),[1] four cases decided by our brethren in the First District that have resolved the precise issue before us. However, the results of these four decisions vary. *Beachem* and *Burns* decided that *Apprendi does* apply retroactively to the review of a timely filed postconviction petition, and *Kizer* and *Scullark* held that *Apprendi does not* apply retroactively to the review of a timely filed postconviction petition.[2] After examining these cases, we shall explain our decision.

---

[1]Subsequent to the filing of our opinion in this case, the First District withdrew the cited opinion in *People v. Burns*, filed a modified opinion upon the denial of rehearing, withdrew that opinion, and eventually filed a new modified opinion upon the denial of rehearing (*People v. Burns*, 332 Ill. App. 3d 189 (2001)).

[2]We note that *People v. Roberts*, 318 Ill. App. 3d 719 (2000), also contemplated whether *Apprendi* applies retroactively to a postconviction proceeding, but the court concluded, "Whether *Apprendi* violations may be addressed in a collateral, postconviction proceeding is something we need not decide in this case." 318 Ill. App. 3d at 728. Even so, Presiding Justice Quinn wrote a special concurrence expressing his belief that *Apprendi* should not be applied retroactively to collateral proceedings. *Roberts*, 318 Ill. App. 3d at 735

In *Apprendi*, Charles C. Apprendi, Jr., was arrested and charged with 23 counts of varying offenses, after firing several bullets into the home of an African-American family that had recently moved into the previously all-white neighborhood of Vineland, New Jersey. *Apprendi*, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351. Pursuant to a plea agreement, Apprendi pled guilty to three of the counts, and the State dismissed the remaining 20. *Apprendi*, 530 U.S. at 469-70, 147 L. Ed. 2d at 442-43, 120 S. Ct. at 2352. One of the counts to which Apprendi pled guilty was second-degree possession of a firearm for an unlawful purpose. *Apprendi*, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2352. Under the statutory laws of New Jersey, this crime carried a penalty of imprisonment for 5 to 10 years.

After Apprendi's sentencing hearing, the trial judge made a finding, based on a preponderance of the evidence, that Apprendi's crime was racially motivated. The trial judge then sentenced Apprendi to an "enhanced sentence" of 12 years' imprisonment on the count of second-degree possession of a firearm for an unlawful purpose. *Apprendi*, 530 U.S. at 471, 147 L. Ed. 2d at 443, 120 S. Ct. at 2352. The "enhanced sentence" was imposed under New Jersey's hate-crime statute, which allowed a trial judge to sentence a defendant to an "extended term" of between 10 and 20 years' imprisonment if the trial judge found by a preponderance of the evidence that the defendant acted " 'with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation[,] or ethnicity.' " *Apprendi*, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351, quoting N.J. Stat. Ann. § 2C:44—3(e) (West Supp. 2000). Apprendi challenged his enhanced sentence, arguing, "[T]he Due Process Clause of the United States Constitution requires that the finding of bias upon which [the] hate[-]crime sentence was based must be proved to a jury beyond a reasonable doubt." *Apprendi*, 530 U.S. at 471, 147 L. Ed. 2d at 443, 120 S. Ct. at 2352.

On review, the United States Supreme Court struck down the New Jersey hate-crime statute. In describing the gravity of the case before it, the Supreme Court stated:

"At stake in this case are constitutional protections of *surpassing importance*: the proscription of any deprivation of liberty without 'due process of law,' Amdt. 14, and the guarantee that '[i]n

(Quinn, P.J., specially concurring). In addition, *People v. Jones*, 321 Ill. App. 3d 515 (2001), has also addressed this issue in considering whether *Apprendi* applies to an untimely, successive postconviction petition. However, as the issue in the instant case concerns a timely filed postconviction petition, we shall not discuss *Jones*.

all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury,' Amdt. 6. Taken together, *these rights indisputably entitle* a criminal defendant to a 'jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' [Citations.]" (Emphasis added.) *Apprendi*, 530 U.S. at 476-77, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355-56.

The Supreme Court then began its analysis by observing that an accused's right to have a jury determine every element of a crime charged and an accused's right to have every fact necessary to constitute the crime for which he is charged proven beyond a reasonable doubt "extends down centuries into the common law." *Apprendi*, 530 U.S. at 477, 147 L. Ed. 2d at 447, 120 S. Ct. at 2356. The court pointed out that the right of an accused to have tried before a jury all the facts that constitute a statutory offense and to have those facts determined under the reasonable doubt standard provides " 'concrete substance for the presumption of innocence.' " *Apprendi*, 530 U.S. at 484, 147 L. Ed. 2d at 451, 120 S. Ct. at 2359, quoting *In re Winship*, 397 U.S. 358, 363, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1072 (1970).

■ After reexamining several cases within this topic and the history upon which they rely, the Supreme Court delivered the following holding as its bottom line:

"Other than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[ ] and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

The Supreme Court then ruled that the procedure allowed by the New Jersey hate-crime statute was unconstitutional because it deprived an accused of his right to have all the facts that increase the penalty beyond the prescribed statutory maximum submitted to a jury and proved beyond a reasonable doubt. The Court characterized the New Jersey procedure as an "unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." *Apprendi*, 530 U.S. at 497, 147 L. Ed. 2d at 459, 120 S. Ct. at 2366.

To no surprise, since the release of the *Apprendi* decision, the floodgates have opened and claims have poured in from defendants seeking clemency from their "unconstitutionally imposed" extended-term sentences. Numerous claims challenging enhanced sentences authorized by several Illinois statutes have already faced scrutiny by the appellate court. Fortunately, solid and consistent case law has developed so that many *Apprendi*-based challenges are now being affirmed, modified, or remanded as summary orders.

However, the issue before us is yet to have such a clear resolution carved. In fact, the question of whether *Apprendi* applies retroactively to cases on collateral review has received no less than four divergent conclusions by the Illinois appellate court. Illinois does not stand alone in reaching conflicting results regarding this question, as conflict exists among the federal circuits as well. See generally *Clark v. State*, 621 N.W.2d 576 (N.D. 2001). Shortly, however, our court may have guidance from our supreme court, as this precise issue is currently before it on appeal in *Hill v. Cowan, appeal docketed*, No. 90229 (September 19, 2000). But for now, the issue is before us, and we shall express our view. Fortunately, the one thing that is in agreement among the courts that have addressed the retroactivity of *Apprendi* is that the analysis must begin with the United States Supreme Court's decision in *Teague v. Lane*.

■ In *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989), the United States Supreme Court clarified *when* a new rule is entitled to retroactive application to cases on collateral review.[3] *Teague*, 489 U.S. at 300, 103 L. Ed. 2d at 348-49, 109 S. Ct. at 1069. In reaching its decision, the Supreme Court adopted Justice Harlan's views of retroactivity and held that a new rule will only apply retroactively to cases on collateral review if it falls within one of two exceptions. *Teague*, 489 U.S. at 307-10, 103 L. Ed. 2d at 353-56, 109 S. Ct. at 1073-75. Under the first exception, a new rule will be given retroactive effect if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe. *Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075. Under the second exception, a new rule will be given retroactive effect if it requires the observance of those procedures that are implicit in the concept of ordered liberty. *Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1076.

There is no debate that *Apprendi* does not fall within the first *Teague* exception. "The first exception to the general rule prohibiting retroactivity applies only to rules that decriminalize a class of conduct or prohibit a certain category of punishment for a class of defendants because of their status or offense." *United States v. Murphy*, 109 F. Supp. 2d 1059, 1063 (D. Minn. 2000). Consequently, whether the rule

---

[3]There is essentially no dispute that *Apprendi* constitutes a "new rule." The appellate court has categorized the rule as such because when the rule in *Apprendi* was announced, it was not dictated by precedent and lower courts had not agreed that an *Apprendi*-like rule was the law at the time. See *People v. Kizer*, 318 Ill. App. 3d 238 (2000). For these reasons, we, too, shall treat *Apprendi* as a new rule.

in *Apprendi* applies retroactively hinges solely on its qualification under the second *Teague* exception.

There is no doubt that the second *Teague* exception is to be narrowly construed. *Teague* reserves the second exception for only "watershed rules of criminal procedure" and rules that "undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction." *Teague*, 489 U.S. at 311, 315, 103 L. Ed. 2d at 356, 359, 109 S. Ct. at 1076, 1078. Furthermore, the rule must be a "bedrock procedural element." *Teague*, 489 U.S. at 315, 103 L. Ed. 2d at 359, 109 S. Ct. at 1078.

The reason for this narrow construction is to effectuate our notion of "finality," which "is essential to the operation of our criminal justice system." *Teague*, 489 U.S. at 309, 103 L. Ed. 2d at 355, 109 S. Ct. at 1074. "Without finality, the criminal law is deprived of much of its deterrent effect." *Teague*, 489 U.S. at 309, 103 L. Ed. 2d at 355, 109 S. Ct. at 1074. Interestingly, the Supreme Court pointed out, "The 'costs imposed upon the State[s] by retroactive application of new rules of constitutional law on habeas corpus ... generally far outweigh the benefits of this application.' " *Teague*, 489 U.S. at 310, 103 L. Ed. 2d at 355, 109 S. Ct. at 1075, quoting *Solem v. Stumes*, 465 U.S. 638, 654, 79 L. Ed. 2d 579, 594, 104 S. Ct. 1338, 1347-48 (1984).

To demonstrate how narrowly this second *Teague* exception is to be construed, we note that since *Teague*, no United States Supreme Court decision or Illinois Supreme Court decision has found a new rule that qualifies under the second *Teague* exception. See *Beachem*, 317 Ill. App. 3d at 702. However, the same cannot be said of all jurisdictions. See *Beachem*, 317 Ill. App. 3d at 704 (the court cites several federal circuit court decisions that have held that certain new rules do come within the second *Teague* exception). According to *Beachem*, the reason our supreme court has not found a new rule that qualifies under the second *Teague* exception is that it has not been presented with a new rule like *Apprendi* or one that reaches " 'bedrock' pronouncements." *Beachem*, 317 Ill. App. 3d at 703. According to *Kizer*, our supreme court has not found a new rule that qualifies under the second *Teague* exception, whereas other jurisdictions have, because our supreme court construes the exception much more narrowly than other jurisdictions. *Kizer*, 318 Ill. App. 3d at 251. This leads us into an examination of our supreme court's decision in *People v. Flowers*, 138 Ill. 2d 218 (1990), where our supreme court adopted *Teague* in determining whether a new rule should apply retroactively to a claim filed under the Post-Conviction Hearing Act.

In *Flowers*, the defendant was charged with the offense of murder and tried before a jury. At the trial, the defendant argued that he was

only guilty of voluntary manslaughter. The jury was instructed on the offense of murder and the offense of voluntary manslaughter in accordance with the prevailing Illinois pattern jury instructions. *Flowers*, 138 Ill. 2d at 225. After deliberations, the jury signed both verdict forms, finding the defendant guilty of murder and voluntary manslaughter. The trial court then instructed the jury that both verdicts could not be accepted because voluntary manslaughter is a lesser-included offense of murder. The jury was directed to continue deliberations. After further deliberations, the jury returned a signed verdict of guilty on the murder charge, and it returned the voluntary manslaughter verdict with their names crossed out. *Flowers*, 138 Ill. 2d at 226. Flowers' conviction and sentence were affirmed on direct appeal.

Sometime thereafter, Flowers filed a postconviction petition. This petition was dismissed by the trial court without an evidentiary hearing. However, the appellate court reversed on the basis of *People v. Reddick*, 123 Ill. 2d 184 (1988), a decision that was handed down by our supreme court sometime after the final judgment was rendered in Flowers' case. *People v. Flowers*, 192 Ill. App. 3d 292, 548 N.E.2d 766 (1989). In *People v. Salazar*, 162 Ill. 2d 513, 518 (1994), the supreme court explained its holding in *Reddick*: The pattern jury instruction as to voluntary manslaughter (the same instruction used in Flowers' case) was erroneous in that it "incorrectly advised the jury that it was the State's burden to prove one of the mitigating mental states that would reduce murder to voluntary manslaughter." (Emphasis omitted.) The appellate court in *Flowers* held that *Reddick* applied retroactively to Flowers' postconviction claim, and the court awarded Flowers a new trial. The State then appealed our decision to our supreme court, which addressed the issue of whether the new rule announced in *Reddick* should apply retroactively to Flowers' postconviction proceeding. *Flowers*, 138 Ill. 2d at 237.

In deciding that *Reddick* did not apply retroactively, our supreme court adopted the United States Supreme Court's decision in *Teague v. Lane*. *Flowers*, 138 Ill. 2d at 239. Our supreme court noted that under the second *Teague* exception, "a new rule may be applied on collateral review if it requires the observance of those procedures that are implicit in the concept of ordered liberty." *Flowers*, 138 Ill. 2d at 241, citing *Teague*, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073. Our supreme court acknowledged the rule in *Reddick* that "certain instructions, such as the burden of proof and elements of the offense, are essential to a fair trial" (*Reddick*, 123 Ill. 2d at 198) and acknowledged that the new rule was of "constitutional dimension." *Flowers*, 138 Ill. 2d at 236-37. Nevertheless, it concluded that the rule did not "establish[ ] such a component of basic due process so as to

fall within [the second exception]." *Flowers*, 138 Ill. 2d at 242. Our supreme court provided little analysis in its discussion as to why the new rule announced in *Reddick* did not qualify under the second exception, but it merely stated, "This exception must be narrowly construed[,] and we do not believe that the *Reddick* rule established such a component of basic due process so as to fall within it." *Flowers*, 138 Ill. 2d at 242. We note that earlier in the decision our supreme court did point out, "[W]hatever confusion may have occurred from these written instructions did not rise to a due process violation, in view of the way in which the situation was handled by the trial judge." *Flowers*, 138 Ill. 2d at 233.

We now turn to the conflicting decisions rendered by the appellate court from several divisions of the First District. As we stated earlier, two of these decisions held that *Apprendi* reaches back to a timely filed postconviction petition, and two of these decisions held that *Apprendi* does not reach back to a timely filed postconviction petition.

The first case decided was *People v. Beachem*, 317 Ill. App. 3d 693 (2000), where the First District, Third Division, held that *Apprendi* applies retroactively to a timely filed postconviction petition. In *Beachem*, defendant Dionna Beachem was found guilty of first-degree murder. *Beachem*, 317 Ill. App. 3d at 695. Following the jury's verdict, the trial court found that two statutory aggravating factors were present: the murder was exceptionally brutal and heinous, indicative of wanton cruelty, and the victim was over 60 years of age. *Beachem*, 317 Ill. App. 3d at 697. Based upon these factors, the trial court sentenced Beachem to an extended-term prison sentence of 90 years. *Beachem*, 317 Ill. App. 3d at 697. Beachem's conviction and sentence were affirmed on direct appeal.

Beachem then filed a postconviction petition. *Beachem*, 317 Ill. App. 3d at 696. While the petition was pending, the United States Supreme Court delivered the *Apprendi* decision. Beachem then filed a supplemental brief challenging her extended-term sentence under *Apprendi*. *Beachem* noted that the most serious question facing the court was whether *Apprendi* applied retroactively to a timely filed postconviction petition. *Beachem*, 317 Ill. App. 3d at 695.

In determining that *Apprendi* reaches back, *Beachem* turned to the second *Teague* exception. The court observed that the rights at issue in *Apprendi* are "at the core of our criminal justice system" (*Beachem*, 317 Ill. App. 3d at 700), but the court also acknowledged that the second *Teague* exception is to be "narrowly construed" (*Beachem*, 317 Ill. App. 3d at 705, quoting *Flowers*, 138 Ill. 2d at 242). *Beachem* likened the defendant's extended-term sentence to one in which, "once the defendant serves the prescribed maximum sentence,

he or she remains in prison on a charge never made and never proved." *Beachem*, 317 Ill. App. 3d at 702. *Beachem* described such a sentence as "repugnant to our notions of fundamental fairness." *Beachem*, 317 Ill. App. 3d at 702. *Beachem* acknowledged that finding the retroactivity of a new rule should never lightly be done but that retroactivity was required because Beachem was essentially convicted of a crime never charged and never proved. *Beachem* held that the rule in *Apprendi* reached "bedrock," and the court concluded that *Apprendi* applies retroactively to a timely filed postconviction petition. *Beachem*, 317 Ill. App. 3d at 706.

The decision in *Beachem* stood as good law for a couple of weeks. Then, the First District, First Division, delivered *People v. Kizer*, 318 Ill. App. 3d 238 (2000). *Kizer* addressed the same issue addressed in *Beachem*, but it reached the opposite conclusion. *Kizer* began by noting that the retroactivity of *Apprendi* hinged on the second *Teague* exception. *Kizer* then looked to our supreme court for guidance as to how narrowly this second exception should be construed.

*Kizer* examined *Flowers* and noted that our supreme court rejected the argument that *Reddick* qualified under the second exception. *Kizer* then examined the *Reddick* decision and opined that *Reddick*, like *Apprendi*, implicated the right to a jury verdict based on guilt beyond a reasonable doubt. *Kizer*, 318 Ill. App. 3d at 250-51. The court stated: "We do not mean to suggest that the very same situation was presented in *Apprendi* as in *Reddick*. But clearly *Reddick* and *Apprendi* deal with similar concerns and concerns that, in our view, are of commensurate gravity." *Kizer*, 318 Ill. App. 3d at 252. *Kizer* noted: "*Reddick* found that the instructions did nothing less than 'essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant of voluntary manslaughter.'" *Kizer*, 318 Ill. App. 3d at 251, quoting *Reddick*, 123 Ill. 2d at 194-95. The *Kizer* court further stated, "The burden of proof problem in *Reddick* exposed defendants to the danger of deprivations just as unfair as any deriving from the *Apprendi* problem." *Kizer*, 318 Ill. App. 3d at 252. *Kizer* then compared *Apprendi* and *Reddick*, stating: "In *Apprendi* the Court was concerned that the defendant was being sentenced to what amounted to a greater crime rather than a lesser one on the basis of a factor found by merely a preponderance of the evidence rather than beyond a reasonable doubt. [Citation.] In *Reddick*, however, the court found that the instructions made it not just less likely, as the lower standard of proof made it in *Apprendi*, but impossible for a finder of fact following the burden of proof instructions to find the defendant guilty of the lesser crime rather than the greater crime. [Citation.]" (Emphasis omitted.)

*Kizer*, 318 Ill. App. 3d at 252.[4] *Kizer* essentially concluded that because our supreme court did not allow *Reddick* to qualify under the second *Teague* exception, *Apprendi* should not qualify either.

A few months later, the First District, Second Division, delivered *People v. Scullark*, No. 1—99—1722 (March 13, 2001). In *Scullark*, the court agreed that *Apprendi* is not distinguishable from *Reddick*, and the court adopted the reasoning of *Kizer*. The *Scullark* court reiterated from *Kizer* that in *Reddick*, the jury received instructions which failed to apprise it of the State's burden of proof and that certain instructions, such as the burden of proof, are essential to a fair trial. *Scullark* agreed that *Reddick* implicated the right to a jury verdict based on guilt beyond a reasonable doubt, and *Scullark* followed *Kizer's* reasoning that because our supreme court in *Flowers* did not allow *Reddick* to fall within the second exception, neither should *Apprendi*.

The last case we shall examine was delivered on March 29, 2001, by the First District, Fourth Division. In *People v. Burns*, No. 1—99—4030 (March 29, 2001), the Fourth Division followed *Beachem* and held that *Apprendi* does apply retroactively to the review of a timely filed postconviction petition. In agreeing with *Beachem*, *Burns* noted the "important distinctions between the effects of the rule pronounced in *Reddick*, as opposed to the rule in *Apprendi*." *Burns*, slip op. at 7. Those distinctions listed by *Burns* included: "[A]lthough *Reddick* might have implicated the right to a jury verdict beyond a reasonable doubt and may have been of constitutional dimensions, the rule in *Reddick* did not trigger a fundamental right to due process. As the supreme court correctly stated in *Flowers*, although the jury instructions might have constituted 'grave error' in *Reddick*, it '[was] not necessarily a constitutional error.' " *Burns*, slip op. at 7, quoting *Flowers*, 138 Ill. 2d at 236. The court continued, "Every case that might have underlying constitutional implications does not, in and of itself, trigger the fundamental right to due process protected by the United States Constitution." *Burns*, slip op. at 7. The court in *Burns* further noted, "[The *Reddick*] rule does not conjure up our traditional notions of due process, by directly violating the constitution, but instead is a violation of Illinois state law, which implicates the constitution at best ***." *Burns*, slip op. at 7.

After distinguishing *Reddick* from *Apprendi*, *Burns* analyzed *Ap-*

---

[4]However, we point out that in *Flowers*, our supreme court stated: "[W]e note that these instructions did not assure only a verdict of murder would be returned. The State points out that other verdicts have been reached in similar cases." *Flowers*, 138 Ill. 2d at 236.

*prendi* under the second *Teague* exception, *without* comparing it to *Reddick,* and found that the rule does fit into the narrow window of rules that fall under the second *Teague* exception. *Burns* observed that the rule in *Apprendi* that specifically requires every factor that increases the penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury and proved beyond a reasonable doubt not only implicates the constitution but also is a "bedrock procedural element" of the fairness of a particular sentence. *Burns,* slip op. at 14. Like *Apprendi,* the *Burns* court pointed out that such a procedure invokes "fundamental constitutional rights under the fourteenth and sixth amendments of the United States Constitution." *Burns,* slip op. at 14. Accordingly, *Burns* held that *Apprendi* did apply to the defendant's first timely filed postconviction petition.

After reviewing the above-cited cases, and a multitude of other cases from varying jurisdictions that we do not cite, we believe that the decisions in *Beachem* and *Burns* are the better-reasoned decisions. We disagree with *Kizer* and *Scullark* and their essential reasoning that *Reddick* and *Apprendi* are indistinguishable and that because *Flowers* did not allow the rule in *Reddick* to come within the second *Teague* exception, *Apprendi* also should not fall within that exception. We adopt the analysis in *Burns* explaining the differences between the rule announced in *Apprendi* and the rule announced in *Reddick.* In addition, we believe that the constitutional issue in *Reddick* does not directly implicate the determination of guilt or innocence (*People v. Weninger,* 292 Ill. App. 3d 340, 343 (1997)), whereas *Apprendi* goes straight to the heart of the determination of guilt or innocence. We believe that the *Apprendi* rule is so grounded in fundamental fairness that it may be considered of watershed importance. We believe that *Apprendi* reaches bedrock.

■ Justice Scalia puts it best in his concurring opinion when he states, "[T]he guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to ... trial[ ] by an impartial jury' has no intelligible content unless it means that all the facts which must exist in order to subject the defendant to a legally prescribed punishment *must* be found by the jury." (Emphasis in original.) *Apprendi,* 530 U.S. at 499, 147 L. Ed. 2d at 460, 120 S. Ct. at 2367 (Scalia, J., concurring). We agree that taking away defendant's right to have a jury determine certain such crucial facts beyond a reasonable doubt, and to force a prosecutor to prove these facts, has a direct implication on the determination of guilt or innocence. As we mentioned in *People v. Nitz,* 319 Ill. App. 3d 949 (2001), there is an immense difference between (a) allowing state officers or government officials to make factual determinations, without any standard of proof, that may deprive an accused of

his liberty and (b) allowing an accused to have those crucial facts proved by the State beyond a reasonable doubt to an accused's fellow citizens. 319 Ill. App. 3d at 968. We believe that depriving an accused of such rights shatters the core of our criminal justice system and undermines the fundamental fairness that must underlie a conviction. We cannot ignore the strong language used by the Supreme Court in *Apprendi* that described such rights as "of surpassing importance" and that described such a sentencing procedure which violates *Apprendi* as "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." *Apprendi*, 530 U.S. at 476, 497, 147 L. Ed. 2d at 447, 459, 120 S. Ct. at 2355, 2366.

Accordingly, based upon the above reasons, we believe that *Apprendi* does qualify under the second *Teague* exception and is therefore entitled to retroactive application to defendant's timely filed postconviction petition. We therefore reject the State's second argument.

■ Having found that *Apprendi* does apply retroactively in this case, the only issue that remains is whether defendant's 75-year, extended-term sentence is unconstitutional. The well-reasoned opinions recently handed down in *Nitz* and *Beachem*, 317 Ill. App. 3d at 707-08, explained why such a sentencing procedure, as defendant received in the instant case, is unconstitutional. We follow those decisions and incorporate their analysis here and find that the imposition of defendant's extended-term sentence was unconstitutional.

Accordingly, we affirm the trial court's dismissal of those issues raised in defendant's postconviction petition, but pursuant to our authority under Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), we modify defendant's sentence of 75 years' imprisonment to 60 years' imprisonment.

Affirmed as modified.

CHAPMAN, P.J., and GOLDENHERSH, J., concur.