THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM HAROLD JOHNSTON, Defendant-Appellant.

Fifth District    No. 5—00—0713

Opinion filed January 25, 2002.

Robert Agostinelli and Carrie B. Marche, both of State Appellate Defender's Office, of Ottawa, for appellant.

Gary Duncan, State's Attorney, of Mt. Vernon (Norbert J. Goetten, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KUEHN delivered the opinion of the court:

William Harold Johnston was convicted of armed robbery, aggravated kidnapping, and attempted murder in May of 1985. He exhausted all of his appeals years ago. A final effort to overturn his convictions, through the pursuit of postconviction proceedings, failed in 1991. During the ensuing nine years, Johnston served his time without hope of relief from a lengthy imprisonment that constituted the measure of his punishment. No doubt, he had resigned himself to a distant out-date, fixed by the sentences imposed and reviewed, sentences seemingly beyond any further legal attack.

Then, the United States Supreme Court handed down a decision in June of 2000 that rekindled Johnston's hopes of an earlier release.

By now, Johnston has satisfied his punishment for armed robbery and aggravated kidnapping. However, he still serves the extended-term portion of a 40-year prison term imposed for the attempted murder. This enhanced punishment is 10 years in excess of the maximum penalty that the law allowed in the absence of a judicial finding of fact. The judge who sentenced Johnston in 1985 found that Johnston's endeavor to take human life was an attempted murder companion to brutal behavior indicative of wanton cruelty. Having reached this finding, the judge imposed the 10 additional years of imprisonment that Johnston now serves.

*Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), a decision that no longer needs introduction, sent shock waves across the legal community when it was handed down. Everyone understood that numerous state legislatures had enacted sentencing machinery not unlike the extended-term sentencing statute employed in this case. Those statutes commissioned judges, rather than juries, to make additional factual findings during sentencing hearings that enhanced the range of penalties available for imposition as punishment. Uneasy questions arose. Among them was a question

of whether the rule enunciated in *Apprendi* was so fundamental as to provide a remedy to prisoners like Johnston whose sentences were long since deemed secure. Johnston wasted little time in an effort to test the question. He filed a new postconviction petition, in which he claimed the following:

> "My constitutional right to a fair sentencing was denied because I was not charged with, [*sic*] and no jury ever passed upon the question of whether the offense of attempt murder was brutal and heinous as per Apprendi, 120 S. Ct. 2345 (2000).
>
> I sincerely apologize for this being so late but *it is not my fault.*"

On October 16, 2000, a judge reviewed the petition. At that time, no Illinois court had addressed the *Apprendi* ruling or its ramifications. The judge summarily dismissed the petition, finding that the claim set forth therein was frivolous and patently without merit. Johnston appeals from that decision.

■ The dismissal of a postconviction petition without the conduct of an evidentiary hearing receives plenary review. *People v. Coleman,* 183 Ill. 2d 366, 388-89, 701 N.E.2d 1063, 1075 (1998).

■ We have already determined that the constitutionally based rule announced in *Apprendi* invalidates the statutory provision under which Johnston was sentenced to extended imprisonment. *People v. Rush,* 322 Ill. App. 3d 1014, 1028, 757 N.E.2d 88, 100 (2001). We have also determined that the rule applies retroactively. *Rush,* 322 Ill. App. 3d at 1028, 757 N.E.2d at 100; accord *People v. Beachem,* 317 Ill. App. 3d 693, 740 N.E.2d 389 (2000). *Contra People v. Kizer,* 318 Ill. App. 3d 238, 741 N.E.2d 1103 (2000). Thus, the rule affords a means to collaterally attack final judgments.

■ While the invalidity of the extended-term sentencing statute and the retroactivity of the rule announced in *Apprendi* are matters that remain unsettled among members of our court, we have considered and ruled upon both. There is nothing new in the State's arguments to warrant a departure from the precedent established in this district. We adhere to the well-reasoned opinion of Justice Welch in *Rush.* Hence, we have already decided those issues that frame the question of whether Johnston's petition states the gist of a constitutional claim for relief. Since Johnston's sentence was imposed in violation of basic constitutional guarantees and since Johnston can raise the violation retroactively, the petition passes the standard by which claims survive this stage of postconviction proceedings.

The State maintains that even if Johnston's petition states the gist of a constitutional claim, the judge's summary dismissal can be affirmed because of the petition's obvious belated filing date. The petition was filed far beyond the statutory time constraints imposed by

our legislature as a limitation on postconviction relief. See 725 ILCS 5/122—1 *et seq.* (West 1998).

In *People v. Wright*, 189 Ill. 2d 1, 723 N.E.2d 230 (1999), the Illinois Supreme Court held that because time is not an inherent element of the right to bring a postconviction petition, noncompliance with the Post-Conviction Hearing Act's time constraints is not a jurisdictional impediment to further proceedings. *Wright*, 189 Ill. 2d at 10, 723 N.E.2d at 236. The supreme court felt that the time limitations set forth in the Post-Conviction Hearing Act should be treated as an affirmative defense. *Wright*, 189 Ill. 2d at 7-10, 723 N.E.2d at 234-36. The statute of limitations can be waived if not raised by the State. *Wright*, 189 Ill. 2d at 10-11, 723 N.E.2d at 236-37.

In *People v. Johnson*, 312 Ill. App. 3d 532, 727 N.E.2d 1058 (2000), *appeal allowed*, 189 Ill. 2d 694, 734 N.E.2d 896 (2000), we commented on how the State's ability to waive the limitations period conferred a power to correct rare miscarriages of justice, long after a procedural time limit had run.

> "Affording the State a review of an untimely filed petition is essential to the singular adversarial role that a prosecutor assumes in the administration of justice. The State's Attorney represents the people of the State of Illinois and therefore, rather uniquely, represents certain interests of those prisoners whom he or she worked to imprison. If an untimely filed petition has obvious substantive merit—that is, if it clearly demonstrates that a prisoner suffered a deprivation of constitutional magnitude—a dutiful prosecutor should waive the procedural defect.
>
> \*\*\* As rare as the latter situation might be, a knowing waiver of a procedural defect in the face of an obvious constitutional deprivation would be entirely consistent with a State's Attorney's oath of office and duty as a public servant.
>
> Since the Post-Conviction Hearing Act's time constraints are procedural rather than jurisdictional, the State's Attorneys of this State possess the power to correct any monumental and obvious injustice. They can do so even where a prisoner's plea for justice arises in an untimely manner. It is a power that courts should not preempt by summary dismissal of untimely but potentially meritorious petitions." *Johnson*, 312 Ill. App. 3d at 534-35, 727 N.E.2d at 1060-61.

We adhere to the position that judges should refrain from the use of summary dismissal based solely upon the question of a petition's timeliness. If an unseasonable petition states the gist of a constitutional claim, the matter should progress to the next stage and await a responsive pleading from the State.

We return this case to whence it came with a reminder of Justice

Welch's words in *Rush*. In addressing the rights that underlie the *Apprendi* decision and the reasons why they should be afforded retroactively, he wrote:

> "We believe that depriving an accused of such rights shatters the core of our criminal justice system and undermines the fundamental fairness that must underlie a conviction. We cannot ignore the strong language used by the Supreme Court in *Apprendi* that described such rights as 'of surpassing importance' and that described such a sentencing procedure which violates *Apprendi* as 'an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system.' " *Rush*, 322 Ill. App. 3d at 1028, 757 N.E.2d at 100, quoting *Apprendi*, 530 U.S. at 476, 497, 147 L. Ed. 2d at 447, 459, 120 S. Ct. at 2355, 2366.

Our holding that the rule pronounced in *Apprendi* has retroactive application implies that those who have suffered its violation have a means to remedy it. We trust that, upon remand, appointed counsel will amend the petition to adequately set forth the reasons why the *pro se* petitioner was not culpably negligent in filing the petition in August of 2000 rather than at a time within the constraints set forth in the Post-Conviction Hearing Act. Moreover, if Johnston has served the maximum sentence to which he could be sentenced absent the constitutionally infirm extension and he has served the three-year, mandatory supervised-release term while in prison, we would expect that his discharge will be sought by way of a writ of *habeas corpus*.

For the reasons stated, the summary dismissal order of the circuit court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

Reversed; cause remanded with directions.

CHAPMAN, Melissa, and GOLDENHERSH, JJ., concur.