THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKEY McGEE, Defendant-Appellant.

Second District   No. 2—01—0299

Opinion filed April 8, 2002.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Martin P. Moltz and Diane L. Campbell, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GROMETER delivered the opinion of the court:

Following a jury trial in the circuit court of Lake County, defendant, Rickey McGee, was found guilty of attempted murder, armed violence, and aggravated battery. The trial court sentenced defendant to concurrent, extended-term sentences of 40 years' imprisonment on the attempted murder and armed violence convictions. On appeal, this court vacated defendant's conviction for armed violence but affirmed defendant's conviction and sentence for attempted murder. *People v. McGee*, 121 Ill. App. 3d 1086 (1984). On more than one occasion, defendant has sought relief pursuant to the Post-Conviction Hearing Act

(Act) (725 ILCS 5/122—1 *et seq.* (West 2000)). The present appeal follows the dismissal of defendant's most recent postconviction petition. Defendant claims that the trial court erred in dismissing his postconviction petition because it raised a valid claim that his extended-term sentence is unconstitutional pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). For the reasons that follow, we affirm.

## I. BACKGROUND

On February 17, 1983, defendant was charged by information with attempted murder (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4(a), 9—1(a)(1)), armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2), and aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4(a)). Prior to trial, the court informed defendant of the sentencing range for each offense as well as the possibility of extended-term sentences. Notably, the trial court advised defendant that a conviction of either attempted murder or armed violence could result in an enhanced sentence of up to 60 years' imprisonment if the court determined that the crimes were committed "with wanton cruelty[ ] or heinousness."

The cause proceeded to a jury trial. On April 12, 1983, the jury returned a verdict finding defendant guilty of all three offenses. The court entered judgment only on the attempted murder and armed violence convictions. On May 13, 1983, following the denial of defendant's posttrial motion, the trial court sentenced defendant to concurrent, extended-term sentences of 40 years' imprisonment on the attempted murder and armed violence convictions. The court imposed extended-term sentences on the basis that defendant's actions were "exceptionally brutal and heineous [*sic*], and indicative of wanton cruelty." See Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2) (now 730 ILCS 5/5—5—3.2(b)(2) (West 2000)). On February 22, 1984, this court vacated defendant's armed violence conviction but affirmed the judgment of conviction of and sentence for attempted murder. *McGee*, 121 Ill. App. 3d at 1091. On October 2, 1984, the supreme court denied defendant's petition for leave to appeal.

In February 1988, defendant filed a *pro se* motion that was captioned as a motion for reduction of sentence. In the motion, defendant argued that his sentence was "totally excessive." The trial court denied defendant's motion, noting that it "raise[d] no constitutional issues" and that "to the extent that [the motion was] to be construed as a motion for reduction of sentence, [it was] untimely."

In August 1991, defendant filed *pro se* a petition for postconviction relief. Defendant raised various allegations of ineffective assistance of trial counsel. Defendant also challenged the propriety of his extended-

term sentence. The trial court appointed counsel to represent defendant. Counsel consulted with defendant and opted not to make any changes or amendments to defendant's petition. The State then filed a motion to dismiss the petition. The State argued that defendant had not shown that counsel was ineffective and that the sentencing issue was argued and decided on direct appeal. The trial court granted the State's motion and dismissed defendant's postconviction petition. This court affirmed. *People v. McGee*, No. 2—92—0181 (1993) (unpublished order under Supreme Court Rule 23).

Subsequently, on June 26, 2000, the Supreme Court decided *Apprendi*. *Apprendi* held that under the due process clause and the jury trial guarantees of the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

Following the release of *Apprendi*, defendant filed a second *pro se* postconviction petition. The petition, dated December 15, 2000, is file stamped December 26, 2000. In the petition, defendant claimed that his extended-term sentence was unconstitutional under the holding in *Apprendi*. On February 16, 2001, the trial court summarily dismissed defendant's petition. In its dismissal order, the court found that "[a]ll points in the petition were or could have been raised on appeal." The court also noted that the petition was successive and untimely. On the merits, the court ruled that *Apprendi* does not apply retroactively to postconviction proceedings. Consequently, the court concluded that defendant's petition was frivolous and patently without merit. This appeal followed.

## II. ANALYSIS

In this appeal, defendant asserts that the trial court erred in dismissing his second postconviction petition because it raised a valid constitutional claim that had not been litigated and could not have been anticipated prior to the Supreme Court's *Apprendi* decision. According to defendant, the imposition of an extended-term sentence in this case violated *Apprendi* because the basis used to enhance the sentence was not submitted to the jury and proved beyond a reasonable doubt. Defendant urges us to hold that *Apprendi* applies retroactively to postconviction proceedings. The State responds that the trial court correctly dismissed defendant's petition as successive and untimely. On the merits, the State claims that *Apprendi* does not apply retroactively to collateral proceedings.

As a preliminary matter, we note that defendant presents some

very persuasive reasons why we should address the merits of his post-conviction petition despite the fact that the petition at issue was successive and untimely. The State does not respond to these arguments in its brief. Because we decide this case on an issue other than those discussed above, we affirm the judgment of the trial court. Nevertheless, we caution the State that in the future it would be prudent to address with thoughtful analysis the issues raised by the appellant or risk the possibility of waiver. See Official Reports Advance Sheet No. 21 (October 17, 2001), Rs. 341(e)(7), (f), eff. October 1, 2001; see also *People v. Montgomery*, 18 Ill. App. 3d 828, 833 (1974) (noting that appellee's failure to raise issue in brief results in waiver).

Turning to the merits, we note that the districts of this state's appellate court are divided regarding whether *Apprendi* applies retroactively to collateral proceedings. The third division of the First District as well as the Third and Fifth Districts hold that *Apprendi* applies retroactively to postconviction proceedings. See, *e.g.*, *People v. Kidd*, 327 Ill. App. 3d 973, 975 (1st Dist., 3d Div. 2002); *People v. Fields*, 331 Ill. App. 3d 323 (1st Dist., 3d Div. 2002); *People v. Johnston*, 327 Ill. App. 3d 385, 387 (5th Dist. 2002); *People v. Lee*, 326 Ill. App. 3d 882, 888 (3d Dist. 2001); *People v. Rush*, 322 Ill. App. 3d 1014, 1028 (5th Dist. 2001); *People v. Beachem*, 317 Ill. App. 3d 693, 698, 706 (1st Dist., 3d Div. 2000). The Fourth District and the remaining divisions of the First District that have addressed the issue hold that *Apprendi* does not apply retroactively to postconviction proceedings. See, *e.g.*, *People v. Montgomery*, 327 Ill. App. 3d 180, 190-91 (1st Dist., 6th Div. 2001); *People v. Rovito*, 327 Ill. App. 3d 164, 178 (1st Dist., 6th Div. 2001); *People v. Stewart*, 326 Ill. App. 3d 933, 939 (1st Dist., 2d Div. 2001); *People v. Scullark*, 325 Ill. App. 3d 876, 889 (1st. Dist., 2d Div. 2001); *People v. Helton*, 321 Ill. App. 3d 420, 424 (4th Dist. 2001); *People v. Kizer*, 318 Ill. App. 3d 238, 252 (1st Dist., 1st Div. 2000). Until now, this district has not squarely addressed whether *Apprendi* applies retroactively to postconviction proceedings.

A review of the previously cited cases indicates that the courts are in accordance that the retroactivity of *Apprendi* depends upon the application of the plurality decision in *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989). Under *Teague*, a new constitutional rule of criminal procedure is not applied retroactively to cases that are final before the new rule is announced. *Teague*, 489 U.S. at 310, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075. However, there are two exceptions. A new constitutional rule should be applied retroactively to cases pending on collateral review if the new rule either (1) places " 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe' "

(*Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075, quoting *Mackey v. United States*, 401 U.S. 667, 692, 28 L. Ed. 2d 404, 420, 91 S. Ct. 1160, 1180 (1971) (Harlan, J., concurring in part and dissenting in part)), or (2) "requires observance of 'those procedures that ... are "implicit in the concept of ordered liberty" ' [citation]" (*Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1076). To qualify for retroactive application under the second *Teague* exception, a rule must be aimed at improving the accuracy of the trial and be, of such importance that it alters our understanding of the bedrock procedural elements essential to a fair trial. *Kizer*, 318 Ill. App. 3d at 247, citing *Sawyer v. Smith*, 497 U.S. 227, 242, 111 L. Ed. 2d 193, 211, 110 S. Ct. 2822, 2831 (1990). *Teague* was adopted by our supreme court in *People v. Flowers*, 138 Ill. 2d 218, 237 (1990).

The courts further agree that *Apprendi* does not fall within the first *Teague* exception and that the second *Teague* exception is to be narrowly construed. See, *e.g.*, *Kizer*, 318 Ill. App. 3d at 250; *Beachem*, 317 Ill. App. 3d at 706. The purpose of narrowly construing the second exception is to promote finality in criminal proceedings. *Rush*, 322 Ill. App. 3d at 1022, quoting *Teague*, 489 U.S. at 309, 103 L. Ed. 2d at 355, 109 S. Ct. at 1074. Indeed, the *Beachem* court points out that neither the United States Supreme Court nor the Illinois Supreme Court has ever found that a new rule qualifies for retroactivity under the second *Teague* exception. *Beachem*, 317 Ill. App. 3d at 702 n.4 (listing cases rejecting retroactivity under second *Teague* exception). Nevertheless, it is at precisely this point that the panels diverge.

*Beachem* was the first reported case in Illinois to hold that *Apprendi* falls within the second *Teague* exception and thus applies retroactively to postconviction proceedings. *Beachem*, 317 Ill. App. 3d at 706. The court reasoned that the rights at issue in *Apprendi* are "at the core of our criminal justice system." *Beachem*, 317 Ill. App. 3d at 700. The court noted that, when a defendant is sentenced to an extended term, the facts that lead to an enhanced sentence become elements of the offense. *Beachem*, 317 Ill. App. 3d at 701. Consequently, where the factors enhancing a sentence are not charged in the indictment, submitted to the jury, and proved beyond a reasonable doubt, a defendant sentenced to an extended term serves the prescribed statutory maximum sentence but "remains in prison on a charge never made and never proved." *Beachem*, 317 Ill. App. 3d at 702. Under such circumstances, the sentence violates the procedures implicit in the concept of ordered liberty. *Beachem*, 317 Ill. App. 3d at 706.

*Kizer* was the first reported decision in this state to hold that *Apprendi* does not fall within the second *Teague* exception and thus does not apply retroactively to postconviction proceedings. *Kizer*, 318 Ill.

App. 3d at 252. The *Kizer* court relied on the supreme court's decision in *Flowers*. In *Flowers*, the supreme court held that the new constitutional rule of criminal procedure announced in *People v. Reddick*, 123 Ill. 2d 184 (1988), did not fall within the second *Teague* exception. *Flowers*, 138 Ill. 2d at 242. In *Reddick*, the supreme court concluded that, when they were read together, the murder and voluntary manslaughter instructions tendered to the jury incorrectly required the State to prove the existence of one of the mitigating mental states necessary to reduce the offense from murder to manslaughter. *Reddick*, 123 Ill. 2d at 194. The court held that the instructions should have provided that, once the defendant presents sufficient evidence to raise issues that would reduce the charge from murder to voluntary manslaughter, the State must prove the statutory elements of murder beyond a reasonable doubt and disprove the mitigating mental states beyond a reasonable doubt. *Reddick*, 123 Ill. 2d at 197.

In *Flowers*, the court confronted the issue of whether the holding in *Reddick* applied retroactively to a case on collateral review. The court began its analysis by noting that the *Reddick* court did announce a new constitutional rule of criminal procedure. *Flowers*, 138 Ill. 2d at 240. The court then concluded that the *Reddick* rule would not be applied retroactively because it did not fall within either of the two *Teague* exceptions. *Flowers*, 138 Ill. 2d at 241-42. Relevant here is the court's reasoning that the *Reddick* rule did not establish such a component of basic due process as to fall with the second *Teague* exception. *Flowers*, 138 Ill. 2d at 242.

The *Kizer* court concluded that the *Reddick* decision implicated the right to a jury verdict beyond a reasonable doubt because the instructions tendered to the jury misstated the appropriate burden of proof. *Kizer*, 318 Ill. App. 3d at 251. The court explained:

> "The burden of proof problem in *Reddick* exposed defendants to the danger of deprivations just as unfair as any deriving from the *Apprendi* problem. In *Apprendi* the Court was concerned that the defendant was being sentenced to what amounted to a greater crime rather than a lesser one on the basis of a factor found by merely a preponderance of the evidence rather than beyond a reasonable doubt. [Citation.] In *Reddick*, however, the court found that the instructions made it not just less likely, as the lower standard of proof made it in *Apprendi*, but *impossible* for a finder of fact following the burden of proof instructions to find the defendant guilty of the lesser crime rather than the greater crime. [Citation.]" (Emphasis in original.) *Kizer*, 318 Ill. App. 3d at 252.

The court then noted that the *Flowers* court held that the *Reddick*

rule was not sufficiently fundamental to fall within the second *Teague* exception. *Kizer*, 318 Ill. App. 3d at 252. Given the similarities between the concerns in *Reddick* and *Apprendi*, the *Kizer* court opined that *Apprendi* did not fall within the second *Teague* exception. *Kizer*, 318 Ill. App. 3d at 252. In other words, since the rules announced in both *Reddick* and *Apprendi* involved the right to a jury verdict beyond a reasonable doubt, and since the supreme court determined that the *Reddick* rule did not fall within the second *Teague* exception, the rule announced in *Apprendi* did not fall within the second *Teague* exception.

■ The *Beachem* court chose not to follow *Flowers* on the basis that the concerns in *Reddick* did not implicate the right to a jury verdict beyond a reasonable doubt. *Beachem*, 317 Ill. App. 3d at 705; see also *Rush*, 322 Ill. App. 3d at 1027 (concluding that, while the constitutional issue in *Apprendi* "goes straight to the heart of the determination of guilt or innocence," the issue in *Reddick* did not). We disagree with the *Beachem* court's attempt to distinguish *Flowers*. As the *Kizer* court observed, in *Reddick* our supreme court expressly found that the jury received instructions that misinformed it as to the appropriate burden of proof (*Reddick*, 123 Ill. 2d at 198-99) and that certain instructions, such as the burden of proof, are essential to a fair trial (*Reddick*, 123 Ill. 2d at 198). Thus, the *Kizer* court concluded that *Reddick* did implicate the right to a jury verdict beyond a reasonable doubt. *Kizer*, 318 Ill. App. 3d at 251.

We agree with the reasoning in *Kizer* and its progeny and hold that *Apprendi* does not apply retroactively to cases on collateral review. As a result, a determination of whether defendant's petition was successive and/or untimely is moot. Accordingly, the trial court properly dismissed defendant's postconviction petition.

## III. CONCLUSION

Based on the foregoing, we affirm the judgment of the circuit court of Lake County.

Affirmed.

O'MALLEY and KAPALA, JJ., concur.